NASHUA CORPORATION *vs.* FIRST STATE INSURANCE
COMPANY & others.[1]

Suffolk. January 12, 1995. - May 2, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Insurance,* Deletion endorsement, Pollution exclusion clause, Construction
of policy, Coverage. *Practice, Civil,* Summary judgment. *Words,* "Op-
erations," "Sudden," "Accidental," "Occurrence."

An endorsement which deleted a pollution exclusion clause from an insur-
ance policy and which applied only to "operations or occurrences" in
New Hampshire did not negate the effect of the exclusion clause with
respect to releases of pollutants in other States from waste generated by
the insured's operations in New Hampshire. [198-201]
In a civil action, the judge incorrectly granted summary judgment in favor
of the defendant insurance companies where there were genuine issues
of material fact regarding whether certain releases of pollutants were
"sudden and accidental" such that damage caused thereby was not ex-
cluded from coverage under a pollution exclusion clause in the plain-
tiff's liability policy [201-203] and regarding whether the plaintiff in-
tended the property damage such that the loss was not covered under
the express terms of the policy [203-204].

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 8, 1990.

The case was heard by *Hiller B. Zobel,* J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*William G. Southard* (*Robert A. Buhlman* with him) for
the plaintiff.

---

[1]Liberty Mutual Insurance Company, Lexington Insurance Company,
and certain underwriters at Lloyds of London and London Market
Companies.

*Ralph T. Lepore, III* (*Janice Kelley Rowan & Geoffrey E. Proulx* with him) for Liberty Mutual Insurance Co.

*Ignatius John Melito,* of New York (*Allan E. Taylor* with him) for First State Insurance Company.

*George Maniatis,* of New York (*Robert A. Romero, Jr.,* with him) for Lexington Insurance Company & others.

LYNCH, J. Nashua Corporation (plaintiff) is a New Hampshire based manufacturer with production facilities in, among other places, Nashua and Merrimack, New Hampshire, and Chelmsford, Massachusetts. From 1974 to 1984, the plaintiff shipped waste products from its Nashua, New Hampshire facility to two recycling facilities, the Silresim Chemical Corporation (Silresim) in Lowell, Massachusetts, and Union Chemical Company (Union Chemical) in South Hope, Maine. In 1983 and 1987, the plaintiff was named as a potentially responsible party in connection with the cleanup of these recycling sites. When the plaintiff notified its insurance carriers (defendants)[2] of these claims, originally one defendant, Liberty Mutual Insurance Company, began making payments on the plaintiff's claims. However, that defendant then ceased making such payments, stating that the plaintiff's policy did not provide for such coverage. The plaintiff then filed an action in the Superior Court seeking a declaration that the defendants were obligated to defend and to indemnify the plaintiff against these claims. In response, the defendants moved for summary judgment.[3] After hearing, the judge allowed the defendants' joint motion for summary judgment, and after a timely appeal we transferred the case to this court on our own motion. We now reverse the judge's allowance of the defendants' motion for summary judgment.

---

[2] The plaintiff's primary liability insurer is Liberty Mutual Insurance Company. Its excess liability insurers include First State Insurance Company, Lexington Insurance Company, and certain underwriters at Lloyds of London and London Market companies.

[3] At the time of the summary judgment motion, the plaintiff had paid approximately $1.4 million for cleanup of the Silresim site, and anticipated owing approximately $1.6 million for its share of the Union Chemical site cleanup.

The policies in question contain language promising to provide coverage for any property damage resulting from accidental occurrences.[4] The policies, however, exclude coverage for property damage caused by a discharge or release of pollution, unless such discharge or release is "sudden and accidental."[5] The policies also contain a "deletion endorsement" which deletes the pollution exclusion clause, thereby reinstating coverage. The deletion endorsement, however, only applies "with respect to operations or occurrences in . . . New Hampshire."[6] The plaintiff contends that coverage should not have been denied, and therefore, it was error for the judge to allow the defendants' motion for summary judgment because (1) the deletion endorsement rendered the pollution exclusion clause inoperative, and (2) even if the deletion endorsement did not render the pollution exclusion clause inoperative, the releases at issue were "sudden and accidental," thereby falling outside of the pollution exclusion clause.

1. *Deletion endorsement.* We first address the meaning of the term "operations" contained within the deletion endorsement. This determination is critical because the plaintiff's facilities that produced the waste are located in New Hampshire,[7] however the pollution damage in question emanated

---

[4]The policies promise to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this policy applies, caused by an occurrence." Property damage is defined as the "physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof." The term occurrence is defined as "an accident . . . which results in . . . property damage neither expected nor intended from the standpoint of the insured."

[5]The language of the pollution exclusion clause, denominated as exclusion f, states "property damage arising out of the discharge, dispersal, release or escape of . . . pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

[6]The endorsement provision states that "[i]t is agreed that the [pollution] exclusion . . . is deleted. This endorsement applies only with respect to operations or occurrences in: Maryland, New Hampshire [and] Vermont."

[7]Some of the waste was produced at a site not located in New Hampshire. This fact is not critical to the view we take of the case.

from the recycling sites located outside of New Hampshire. Therefore, the question becomes whether the term "operations" contained within the deletion endorsement refers to the operations that produced the waste or to the operations that actually caused the releases. The Superior Court judge ruled that the relevant "operations" were those of the recycling sites because it was those operations which actually caused the releases of pollutants which resulted in the property damage insured against. Thus, given that the recycling sites' operations were located outside New Hampshire, the judge held that the deletion endorsement did not apply, and thus the pollution exclusion clause remained in place.[8] The plaintiff contends that the judge's interpretation of the term "operations" is erroneous because it focuses on where the releases occurred, rather than on where the insured is located.

To begin, the plaintiff states that the plain language of the deletion endorsement does not require a New Hampshire release in order for the endorsement to apply. Moreover, the plaintiff states that the regulatory purpose behind the endorsements was to compensate New Hampshire insureds for the diminution in coverage resulting from the inclusion of pollution exclusion clauses in their policies. The plaintiff argues that the term "operations" should be interpreted in a manner consistent with this purpose of protecting New Hampshire insureds and, therefore, the focus should be on where the insured's operations are located. It follows, according to the plaintiff, that, because its New Hampshire operations generated the waste that caused the property damage,

---

[8] The judge stated: "In the present case, the release took place at Union Chemical (Maine) and Silresim (Massachusetts). This court need not reach the question whether they amounted to 'occurrences' within the respective policies' language. Whether 'occurrences,' or mere happenings, they did not take place in New Hampshire; nor were the related 'operations' located there. At issue are recycling activities in Maine and Massachusetts involving the routine discharge of hazardous waste into the surrounding environment during storage and processing. Notwithstanding that *generation* of the wastes occurred in New Hampshire, the *release* of the pollutants happened elsewhere. The New Hampshire endorsement thus does not apply" (emphasis in original).

the deletion endorsement applies, rendering the pollution exclusion clause inoperative.[9] This argument loses sight of that fact, as noted by the judge, that the pollution damage occurred, not as a result of the generation of the waste, but by its release into the environment.

We have stated that, when construing the language of an insurance policy, it is appropriate "to consider [whether] an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.*, 407 Mass. 689, 700 (1990). Furthermore, we realize that an insured is entitled to the most favorable interpretation of the policy language when there is more than one rational interpretation of the policy language, or where the policy language is ambiguous. *Id.* See *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993). However, in this case the policy language unambiguously favors the defendants.

Even if the New Hampshire insurance commissioner intended to require that property damage resulting from waste produced in New Hampshire, but disposed far beyond the territorial limits of the State, be covered by insurance, we conclude that that intent was not expressed in the deletion endorsement.[10] The pollution exclusion applied to certain re-

---

[9]The plaintiff also contends that the defendants' conduct supports its interpretation of the term "operations." More specifically, the plaintiff states that the defendants made payments on the relevant claims to the plaintiff up until the time that this litigation was filed. The plaintiff also asserts that the defendants' employees admitted that the term "operations" could have varied interpretations. However, after hearing the evidence regarding the proper interpretation of the term, the judge held that the plaintiff was merely trying to assert some type of waiver claim (i.e., that the defendants' conduct somehow amounted to a waiver of its right subsequently to deny coverage of the claim). The judge rejected this argument stating that the law of waiver cannot be used to broaden coverage or supply coverage that does not exist already under the existing contract. See *Merrimack Mut. Fire Ins. Co.* v. *Nonaka*, 414 Mass. 187, 189 (1993). We agree with the judge and also reject this argument advanced by the plaintiff.

[10]The record contains no contemporaneous explanation of the purpose or intent of the commissioner's action. The affidavit of an employee of the insurance department, prepared after the fact apparently for the purpose of litigation, expressing the employee's view of the commissioner's intent

leases or discharges of pollutants. The deletion endorsement by its terms negates the effect of that exclusion only with respect to operations and occurrences in New Hampshire. When read together, the plain meaning is that the exclusion does not apply to releases of pollutants occurring in New Hampshire. We agree with the judge that the deletion endorsement does not apply, and that the pollution exclusion clause remains in effect as to the releases from the Silresim and Union Chemical facilities.

2. *Pollution exclusion clause.* The next issue we address concerns the nature of the relevant releases, and whether such releases were the kind of releases covered by the policies in question. As we stated earlier, the pollution exclusion clause contained in the policies exclude coverage for all pollution damage, unless the pollution damage was caused by a "sudden and accidental" release. We construed the "sudden and accidental" exception to the pollution exclusion clause in *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc.,* 407 Mass. 675, 679-683 (1990). In that decision, we concluded that the word "sudden" has a temporal element, and that "only an abrupt discharge or release of pollutants falls within the exception." *Id.* at 680-681 & n.4. Moreover, we stated: "The sudden event to which the exception in the pollution exclusion clause applies concerns neither the cause of the release of a pollutant nor the damage caused by the release. It is the release of pollutants itself that must have occurred suddenly, if the exception is to apply so as to provide coverage. The exception thus focuses on the circumstances of the release." *Id.* at 679. For example, in *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.,* 412 Mass. 330, 336 (1992), the de-

has no probative value. See *Administrative Justice of the Hous. Court Dep't* v. *Commissioner of Admin.,* 391 Mass. 198, 205 (1984) (inappropriate to use evidence of statements attributed to individual legislators to ascertain intent of legislation); *Keane* v. *City Auditor of Boston,* 380 Mass. 201, 207 n.5 (1980) (stating not aware of any cases permitting legislator to testify after the fact about legislative intent); *McKenney* v. *Commission on Judicial Conduct,* 377 Mass. 790, 799 (1979) (postenactment affidavit of House Chairman of Committee on Judiciary is not relevant legislative history).

fendant SCA argued that the releases in question were sudden and accidental because each release occurred abruptly every time an individual barrel was smashed. *Id.* However, in *SCA* we rejected the defendant's barrel-by-barrel type of microanalysis, and instead concluded that the releases in that case were the result of a pattern of pollution-prone operations that occurred over an extended period of time. *Id.* (discharge ceases to be accidental or sudden when it continues for extended period of time). See also *Lumbermens Mut. Casualty Co.* vs. *Belleville Indus., Inc.*, 938 F.2d 1423, 1428-1430 (1st Cir. 1991), cert. denied, 502 U.S. 1073 (1992) (distinguishing between "sudden and accidental" releases and releases which result from ordinary business operations). In this case, the judge ruled that the factual record demonstrated that both the Union Chemical site and the Silresim site maintained pollution-prone recycling operations where pollution occurred routinely, as part of its regular business activities.[11] He concluded, therefore, that the releases of pollutants were not "sudden and accidental" and ordered summary judgment for the defendants.

Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The plaintiff argues that it was error for the judge to grant summary judgment in favor of the defendants because a genuine issue of material fact existed regarding

---

[11] The judge held that the "Plaintiff has failed to establish that the releases were sudden and accidental. Rather, the present record shows that the contamination at Union Chemical, continuous over a number of years, resulted from (a) leaching of hazardous chemicals into the soil and water during the reclamation process, and (b) leaking from drums holding chemical waste before processing. At Silresim, contamination followed the regular dumping of hazardous wastes into a pit not equipped with an impermeable lining. Because the releases of pollutants resulted from routine, continuous business practices, the pollution exclusion clause bars Plaintiff's claim for indemnity."

whether any of the relevant releases was sudden and accidental. We agree. In this case, there was evidence that (1) a tank seal burst, resulting in 2,000 gallons of xylene being released at the Union Chemical site and (2) a fire and subsequent explosion resulted in a release at the Silresim site. The record does not seem to establish that these events occurred as part of either reclamation site's ordinary operations. Furthermore, the uncommon nature of these releases tends to establish the "sudden and accidental" character of the events. Although most of the releases resulted from the reclamation sites' routine business practices, it was error for the judge to grant summary judgment in favor of the defendants because the plaintiff has proffered evidence that some of the releases were indeed "sudden and accidental."

The defendants rely on *Liberty Mut. Ins. Co. v. SCA Servs., Inc.*, *supra*, and argue that the plaintiff is trying to "microanalyze" the reclamation facilities' operations, and that over-all, the pollution occurred as part of the reclamation sites' ongoing operations. The defendants' reliance on *SCA*, *supra*, is misplaced. In this case, unlike *SCA*, there is evidence that releases resulted from events that did not occur regularly as part of the reclamation sites' operations. Therefore, a factual question exists regarding what portion of the pollution damage resulted from the reclamation sites' ordinary operations and what portion was caused by sudden and accidental releases, if any. Because we determine that a genuine issue of material fact does exist, we conclude that the judge erred when he granted summary judgment in favor of the defendants.[12]

3. *Other issues.* The defendants also argue that the plaintiff's claims are barred because the property damage was intended as a matter of law, and therefore, cannot constitute

---

[12]After this opinion was released London Market Insurers, one of the three defendants, argued that its policies were not in effect at the time that the tank burst. Our opinion does not address this issue, and it is open to the parties to address it in the subsequent proceedings in the Superior Court.

an "occurrence" as defined in the policies.[13] Under certain circumstances, we have concluded that the intent to cause injury existed as a matter of law. See *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 408 Mass. 393, 400 (1990) (intent to injure may be inferred as matter of law from acts of child molestation and rape); *Newton* v. *Krasnigor*, 404 Mass. 682, 687 (1989) (intent to start fire implies intent to cause some property damage as matter of law). See also *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 169 (1983) (self-evident that if a person is pushed down a flight of stairs it is to be expected that person will be hurt). In those cases it was clear from the very nature of the act that the harm to the injured party was intended. However, we cannot say that the plaintiff's conduct of transporting waste materials to licensed reclamation facilities is akin to the type of wrongful conduct where we precluded coverage automatically as a matter of law. Ordinarily a party's intent is a question of fact. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 87 (1984) (whether insured intentionally sought to injure driver and passenger when he threw piece of blacktop at automobile question of fact). Therefore, it would be improper to order summary judgment in favor of the defendants on this basis.

For the aforementioned reasons, we now reverse the judge's allowance of the defendants' motion for summary judgment and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

[13]The term "occurrence" is defined in the policy as an accident resulting in property damage "neither expected nor intended from the standpoint of the insured."