Doerfer, J.
On June 10, 1998, this matter came before the court for hearing on the cross motions of the parties for summaiy judgment. The specific issue is whether the defendant, Nationwide Insurance Co. (“Nationwide”), has been prejudiced by plaintiff Stephen Byron’s (“Byron”) late notice of his uninsured motorist claim. Byron’s motion for summaiy judgment asserts that Nationwide has failed to produce evidence of prejudice, while Nationwide opposes Byron’s motion and seeks summaiy judgment in its favor on the grounds that it has been prejudiced on two fronts: its inability to perform a contemporaneous investigation and the loss of its right to recover as a subrogee.
For the following reasons, summaiy judgment shall enter for Nationwide that it was prejudiced by the lost opportunity to recover from the tortfeasor, and a declaration shall enter declaring that Nationwide need not arbitrate the issue of Byron’s untimely notice of his uninsured motorist claim.
BACKGROUND
It was a dark and stormy night on October 28,1990, when Byron, a state trooper, was on duty in Wrentham, Massachusetts, at approximately 5:30 p.m. He had been dispatched from the Foxborough barracks to respond to a two-car motor vehicle accident on Route 1. When he arrived on the scene, Byron observed the two vehicles in the northbound lane. Two tow trucks from Mike’s Truck Stop (“Mike’s”) reported to the scene to provide towing services. One of these trucks was a flatbed truck operated by Christopher Brown (“Brown”). The other was a truck operated by Brian Caruso, the owner of Mike’s.[2] Brown pulled his truck into the northbound lane, facing to the south. Byron instructed him to extinguish his headlights, which were blinding the oncoming traffic, but to leave his parking lights on. Byron also told him that Brown would need to reverse the truck’s direction and pull the vehicles apart before towing them. However, Byron says he further instructed Brown not to do this until Byron had stopped traffic to allow him to turn the truck around.[3]
After speaking with Brown, Byron ascertained the medical condition of the accident victims. As he walked to his cruiser to radio-in his report, he attempted to pass between Brown’s flatbed truck and the rear of the vehicle Brown was to winch apart, but tripped over a chain which had been connected between the flatbed and the vehicle. He fell forward, striking his head on the ground, and injuring his hands, shoulders, head, neck and back. Lieutenant Walter Hackett, Trooper William Apgar and Trooper David Rae helped him to his feet. Byron was briefly examined by EMTs on the scene, and instructed to return to the barracks. Once at the barracks, Lieutenant Martin Faye sent Byron home.
Byron was eventually diagnosed with a herniated disc, and underwent discectomy surgeiy. His C6-7 disk was removed and fused with bone from his right hip. As a result of these injuries, Byron did not return to work until November 6, 1993, more than three years after the accident. During some or all of these three years (the record is not clear), Byron received “injured on duty” benefits from the Commonwealth.
Before Byron was approved to receive these benefits, Lt. Faye and the Office of the State Fire Marshal investigated the accident for the purposes of determining the legitimacy of Byron’s injuiy, whether Byron was on duty at the time of the injuiy and lawfully performing his duties, and whether Byron’s own negligence led to the injury.[4] Lt. Hackett testified in his deposition that, in the course of these investigations, the state police ordinarily fill out two forms, after taking statements from witnesses and the injured, acquiring certification from the doctors, and performing other unspecified routine investigatory practices.[5] During its investigation of Byron’s injuiy, the state police obtained statements from Lt. Hackett and Trooper Apgar, both of whom witnessed Byron’s fall. In these statements, the officers documented their observations about the lighting and weather conditions, the location of the chain, and Byron’s movements.
*572 Byron filed his Statement in Support of Claim in November, 1990, wherein Lt. Fay noted that “the cable was placed down without Tpr. Byron’s knowledge and he could not have seen it.” Captain Michael Shanahan, the Troop Commanding Officer, wrote that Byron was on duty and was not at fault for the accident, and recommended his claim be paid.
On July 29, 1992, Byron and his -wife Faye filed a civil suit in Middlesex Superior Court against Mike’s, seeking compensatory and loss of consortium damages. During the course of discovery, in an off-the-record conversation on November 3, 1993, counsel for Mike’s informed Byron’s attorney that Mike’s general liability and automobile insurance coverage had been allowed to lapse, leaving no coverage for Byron. Five days later, on November 8, 1993, Byron notified Nationwide of his claim for uninsured motorist benefits under his automobile policy.[6] Nationwide denied coverage by letter dated July 12, 1994, citing Byron’s failure to satisfy the “prompt notice” requirement of his policy.
Mike’s filed for reorganization in the United States Bankruptcy Court in Boston and subsequently filed a suggestion of bankruptcy in the Middlesex action on November 16, 1993. The Superior Court (Gershengorn, J.) stayed the Middlesex action by order dated December 2, 1994. The bankruptcy court (Kenner, C.J.) set April 4, 1994, as the “bar date,” meaning that all creditors must file their proof of claim by that date or be forever barred from pursuing any claim against Mike’s. The summary judgment record indicates that no such claim was filed. Following its reorganization, Mike’s emerged from bankruptcy and continued to operate as an ongoing concern.
Byron and his wife filed the instant action on July 19, 1995, seeking a declaratoiy judgment that he has the right to submit the matter to arbitration according to the terms of the policy and that Nationwide must arbitrate the issue of timely notice. He also sought costs and other relief. The motions sub judicata were filed March 30, 1998.
DISCUSSION
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that the moving party is entitled to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Mass.R.Civ.P. 56(c). The moving party has the burden of showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Flesner v. Technical Communications Corp., 410 Mass. 805, 808-09 (1991) (Citations omitted); Nashua Corp., 420 Mass. at 202.
“This burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Id., citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The substantive law will identify whether a fact, in the context of the case, is material. Beatty v. NP Corp., 31 Mass.App.Ct. 606, 608 (1991).
Where cross motions for summary judgment are before the court, summary judgment will be granted to the party entitled to judgment as a matter of law “if there is no real dispute concerning the salient facts” or if the case involves a question of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). “The fact that both parties [have] moved for summary judgment does not mean that no material factual issue [remains].” Basch and Sons v. Travelers Indent Co., 392 Mass. 1002, 1002 (1984).
I. Nationwide has shown that actual, material prejudice inured as a result of Byron’s untimely notice of his uninsured motorist claim.
To lawfully deny Byron uninsured benefits, Nationwide must show not only untimely notice but material prejudice therefrom. Lighter v. Lumbermens Mut. Casualty Ins. Co., 43 Mass.App.Ct. 415, 417 (1997), citing Goodman v. American Casualty Co., 419 Mass. 138, 142 (1994). That requirement applies equally to uninsured and underinsured benefits. Goodman, 419 Mass. at 142. Counsel for Byron conceded at oral argument that Byron’s notice was untimely. Thus, the sole issue before the court is whether Nationwide was prejudiced by Byron’s delay.
Nationwide bears the burden of showing actual prejudice. Darcy v. Hartford Ins. Co., 407 Mass. 481, 486 (1990). It must show “material and specific" prejudice, that “it suffered ‘actual prejudice,’ not just a ‘possibility’ of it; that there has been ‘actual harm’ to its interests; that it has been relegated to a ‘substantially less favorable position than it would have been in had timely notice been provided.’ ” Employers' Liab. Assurance Corp., Ltd. v. Hoechst Celanese Corp., 43 Mass.App.Ct. 465, 476, rev. denied, 426 Mass. 1103 (1997), quoting Darcy, 407 Mass. at 486-87. Nationwide must also “identify!] the precise manner in which its interests have suffered.” Id.
Here, Nationwide points to two sources of such prejudice: the loss of its subrogation rights due to Byron’s failure to file a claim against Mike’s bankruptcy estate by the bar date, and its inability to perform a contemporaneous investigation. Because this court determines that Nationwide has met its burden regarding the subrogation issue, it need not answer the question of whether Nationwide was prejudiced by its inability to perform a contemporaneous investigation.
*573 A. Nationwide has met its burden of showing that it was prejudiced by the lost opportunity to exercise its subrogation rights.
Nationwide argues that it has been prejudiced by the loss of its right to subrogation. Under the terms of Byron’s policy, Nationwide had the legal right to recover any uninsured benefits paid to Byron, and he was obligated to “do nothing to interfere with those rights . . . [and] do whatever is necessary to help [Nationwide] recover” any amount paid. See, e.g., MacInnis v. Aetna Life & Casualty Co., 403 Mass. 220, 223-24 and 224 n.7 (1988).
Byron failed to file a claim against Mike’s bankruptcy estate before the bar date, thus precluding any opportunity Nationwide would have had to litigate its subrogation claim against Mike’s and defeating Nationwide’s right to repayment of any uninsured benefits. Whether Nationwide was prejudiced by this lost opportunity to recover, however, depends upon whether Mike’s bankruptcy estate would have had sufficient assets to make significant payments to its creditors, including Nationwide. “[A] right to repayment is meaningless if the tortfeasor has no substantial asset from which to recover.” Lighter, 43 Mass.App.Ct. at 418.
While the evidence in the summary judgment record does not establish the amount of Mike’s bankruptcy estate or the number and dollar amount of Byron’s claim or the other creditors’ claims, the undisputed facts do show that Mike’s had sufficient assets to satisfy 100% its unsecured creditors who timely filed claims and still emerge from bankruptcy a viable entity. Based on those uncontradicted facts, Nationwide has demonstrated as a matter of law that Mike’s had substantial assets[7] from which it could have had a meaningful opportunity to recover. If Byron had timely filed a claim in bankruptcy court, Nationwide (as subrogee) could have stepped into Byron’s shoes and collected some, or all, of any benefits it had paid to Byron under the policy. While the summary judgment record reveals neither the limits of Byron’s uninsured coverage nor the amount of damages Byron sought in the Middlesex action, preventing this court from quantifying Mike’s assets or Nationwide’s lost opportunity to recover, the record does show that Nationwide could have recovered something. Mike’s had sufficient assets to satisfy its creditors’ claims 100<t on the dollar and still emerge from bankruptcy as an ongoing concern. On those facts alone, Nationwide has met its burden of showing material, actual harm to its right of subrogation, and is entitled to summary judgment.
B. Nationwide was not prejudiced by the lack of a contemporaneous investigation.
While the court need not address whether Nationwide was also prejudiced by its inability to perform a contemporaneous investigation, it is apparent that Nationwide falters on this argument. In the summary judgment record before the court, there is evidence of the investigation normally undertaken by the state police to determine whether injured troopers are entitled to “injured on duty” benefits, and a statement from Lt. Hackett that such an investigation was undertaken in Byron’s case. Despite information uncovered as a result of the state police’s investigation, documentation provided by Byron to Nationwide while it evaluated his claim, and discovery in this case, Nationwide complains that it was prejudiced by its inability to independently investigate the accident. In particular, Nationwide points to the loss of medical information (including the lost opportunity to obtain an examination of Byron before or shortly after his discectomy) and the loss of witnesses (particularly Brian Caruso, the second tow truck driver who died before Byron filed his claim). Without this evidence, Nationwide claims, it was unable to determine whether Byron was more than 50% at fault, therefore precluding it from determining whether Byron was entitled to recover under his policy’s uninsured motorist provision.
Nationwide has failed to meet its burden of showing how, specifically, the missing information would enable it to make that determination, or what specific evidence they need that has not already been discovered. At their depositions, Byron, Hackett, and Brown testified that it was dark and raining heavily at the time of Byron’s fall, that there was no artificial lighting from street lights or overhead lights, and that the only lighting came from passing traffic and the rear lights of the tow truck. Nationwide also does not explain how a medical examination of Byron would aid its determination of whether he was at fault, and what medical information it needs that is not available from Byron’s existing medical records. Finally, regarding the missing witness, Brian Caruso, Brown testified at his deposition (which was provided to Nationwide before this suit was filed) that Caruso was not in the vicinity when Byron fell, and that only himself, Lt. Hackett and Trooper Apgar witnessed Byron fall. Nationwide has made no showing in the summaiy judgment record that Caruso was a material witness who would have relevant information regarding whether Byron was contiibutorily negligent.
In short, Nationwide has not specifically established actual, material prejudice arising from its inability to investigate, based on the summary judgment record. It points to nothing that it needed that was not addressed by the state police in its investigation or uncovered during discovery in this case. Thus, none of the lost investigatory opportunities of which Nationwide complains resulted in material prejudice. Compare Lighter, 43 Mass.App.Ct. at 417 n.4 (delay resulting in “the loss of crítica1 evidence, or testimony from material witnesses” may lead to prejudice) (emphasis supplied). While the question of why the state police needed to determine if Byron was at fault for the *574 accident remains an open one, see note 4, supra, it is of no consequence to this decision due to this court’s above ruling.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Nationwide Insurance Co.’s Cross Motion for Summary Judgment is ALLOWED. Nationwide has demonstrated on the undisputed facts that it has been materially prejudiced by plaintiff Stephen Byron’s late notice of his uninsured motorist claim.
It is further ORDERED that Byron’s Motion for Summary Judgment is DENIED.
It is further ORDERED that a declaration shall enter DECLARING:
(1) that Byron’s notice of his uninsured motorist claim was late and that Nationwide was materially prejudiced thereby, due to the loss of a meaningful opportunity to recover any benefits paid to Byron; and
(2) that Nationwide will not be required to submit Byron’s uninsured claim to arbitration.

 Brian Caruso died in June 1992, at which point his sister and father took over the operation of Mike’s.

 In his deposition, Brown disputes that Byron gave him this instruction. He states that when he (Brown) informed other troopers at the scene that he would have to turn his wrecker around to pull apart the two cars, they responded “No problem.” According to Brown, at the time he moved his truck, Byron was directing traffic in the roadway.

 Apparently, whether Byron’s own negligence contributed to his accident effects his ability to collect "injured on duty” benefits. At Lt. Hackett’s deposition, he was asked if troopers could collect “injured on duty” benefits even if they were at fault themselves; unfortunately, the question was never answered. Lt. Hackett only testified that the issue of whether Byron was at fault was addressed by the state police during its investigation of his injury.

 Nothing in the record specifies what steps Lt. Faye undertook in the course of this investigation. Trooper Hackett stated at his deposition that he had performed approximately 50 “injured on duly” investigations, and testified what those investigations usually entail. His only role in the investigation of Byron’s accident, however, was to write a witness statement.

 Byron’s actual policy is not in the summary judgment record; apparently, it could not be located. At oral argument, however, the parties stipulated that the boilerplate provisions provided at pp. 55 through 60 of Nationwide’s exhibit were the same provisions that would have been effect in Byron’s policy at the time of the October, 1990, accident.

 While the term “substantial assets” has not been clarified in this context, Black’s defines substantial to mean, inter alia, “of real worth and importance; of considerable value.” Black’s Law Dictionary 1428 (6th ed. 1990).