MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING
ASSOCIATION *vs.* NICHOLE GALLAGHER, administratrix,[1]
& another.[2]

No. 08-P-1301.

Suffolk. April 14, 2009. - August 24, 2009.

Present: KAFKER, GREEN, & GRAHAM, JJ.

*Insurance,* Coverage, Construction of policy. *Contract,* Insurance.

In an action in which an insurer sought a judgment declaring that its home-
owner's policy did not provide coverage for a claim brought against an
insured by the estate of a decedent who had committed suicide, alleging
that the insured had negligently left prescription medication in a place
within his house accessible to the decedent, despite knowing of the
decedent's fragile emotional health, the trial court judge correctly concluded
that the claim was excluded from coverage by a provision of the home-
owner's policy that excluded claims for bodily injury arising out of the use
of controlled substances, where the decedent's own use of the medication
(which was excluded from coverage under the policy) was the immediate
cause of his death, and whatever causal contribution the insured's legitimate
use (which was excepted from the exclusion) may have furnished was
decidedly more remote. [59-61]

CIVIL ACTION commenced in the Superior Court Department on
May 14, 2007.

The case was heard by *Patrick F. Brady,* J., on motions for
summary judgment.

*Kenneth M. Levine* for the defendants.

*Richard F. Wholley* for the plaintiff.

GREEN, J. On April 6, 2001, eighteen year old Stephen Mc-
Master died in an apparent suicide, after ingesting an overdose
of propoxyphene. His mother, the defendant Nichole Gallagher,
brought an action on behalf of his estate against the defendant

---

[1]Of the estate of Stephen McMaster.

[2]John Scaduto.

John Scaduto, claiming that Scaduto had negligently left propoxyphene (which Scaduto had purchased pursuant to a physician's prescription) in a place within his home accessible to McMaster, despite knowing of McMaster's fragile emotional state.[3] At the time of McMaster's death, Scaduto had in force a homeowner's policy from the plaintiff insurer. Following Scaduto's demand on the insurer for coverage, the insurer brought this action, seeking a declaration that its policy did not provide coverage against Gallagher's claim. The principal issue in the case is whether (as the motion judge ruled) the claim is excluded from coverage by a provision of the policy which excludes claims for bodily injury

> "[a]rising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) [*sic*] as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician."[4]

The construction of language in an insurance contract presents a question of law. See *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 797 (2000). In the first instance, we construe the policy language in accordance with its

---

[3]McMaster and Gallagher had been overnight guests in Scaduto's home for some time when McMaster ingested the propoxyphene that caused his death. The parties dispute whether McMaster was a member of Scaduto's household for the purposes of Scaduto's homeowner's policy; our view of the case renders that question immaterial.

[4]Construction of the relationship between the controlled substances exclusion and the exception for prescribed use appears to be a matter of first impression. The parties have brought to our attention only one reported case construing the controlled substances exclusion. That case, *Prudential Prop. & Cas. Ins. Co.* v. *Brenner*, 350 N.J. Super. 316 (2002), involved a claim arising out of the death of a drug dealer who was shot during an attempt to rob him of a large quantity of marijuana, so that the exception for prescription drug use did not come into play. Our research has uncovered only one other appellate decision, *Westfield Natl. Ins. Co.* v. *Long*, 348 Ill. App. 3d 987 (2004), which involved a claim by the mother of a girl who died from a toxic overdose of methamphetamine; again, the exception for prescription drug use was not implicated.

plain meaning. See *Finn* v. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 452 Mass. 690, 695 (2008). "Although an exclusionary clause is construed narrowly . . . '[w]e are not free to revise it or change the order of the words.' " *Ibid.*, quoting from *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984) (internal citation omitted). "The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. . . . Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 457 (1999).

In the present case, Gallagher suggests, the question is the scope not only of the exclusion, but of the exception to the exclusion. Gallagher urges us to consider McMaster's death as falling within the exception rather than the exclusion, as it "arose out of" Scaduto's legitimate prescription use of the propoxyphene that caused McMaster's death, in the sense that the medication would not have been accessible to McMaster but for Scaduto's use. The argument is not entirely without persuasive force.

The argument is flawed, however, as it overlooks the separate and independent application of the exclusion to McMaster's own use of the propoxyphene. Accepting as a threshold proposition that, to the extent that McMaster's death arose out of Scaduto's use of his prescribed propoxyphene, it was excepted from the exclusion (and was, therefore, covered), the fact remains that McMaster's own use of the propoxyphene clearly does not fall within the exception. There is no serious question that McMaster's use of the propoxyphene falls within the exclusion.[5] In such circumstances, his death is excluded from coverage under

---

[5]The parties do not dispute that McMaster's use of the propoxyphene caused his death. We are unpersuaded by Gallagher's suggestion that propoxyphene is not a controlled substance. The substance is included on the list of controlled substances promulgated by the Federal Drug Enforcement Administration pursuant to the regulatory authority delegated to it under 21 U.S.C. § 811 and § 812 (2006). It is also referred to as a narcotic drug in 21 C.F.R. § 1308.14(b)(2) (2009).

the policy: "[t]hat other causes for an injury also may exist does not preclude a determination that the injury arises out of activities excluded from coverage under the policy." *American Home Assur. Co.* v. *First Specialty Ins. Corp.*, 73 Mass. App. Ct. 1, 6 (2008). Indeed, "in *Monticello Ins. Co.* v. *Dion*, 65 Mass. App. Ct. 46, 48-49 (2005), in holding that the death arose out of operations performed for the insured, a determination that precluded coverage because of an exclusion in the policy, we considered it irrelevant that the death could be said to have been proximately caused by the insured's negligence." *Ibid.*[6] Accord *Commerce Ins. Co.* v. *Theodore*, 65 Mass. App. Ct. 471, 472-473 (2006). The facts of the present case furnish an even more compelling basis for application of the exclusion, as the excluded use (McMaster's) stands as the immediate cause of his death; whatever causal contribution Scaduto's use may have furnished was decidedly more remote.

The judgment of the Superior Court is affirmed.

*So ordered.*

---

[6]In *Dion, supra,* the decedent was killed when a tree fell on her while she was working to clear trees from a job site. The decedent was operating a wood chipping machine at the time of the accident. We concluded that, regardless of whether the decedent could be considered an independent contractor or an employee, her death fell within the commercial general liability policy's exclusion for claims arising out of operations performed for the insured by independent contractors or employees.