QUINCY MUTUAL FIRE INSURANCE COMPANY vs. JEFFREY
CRISPO & another.[1]

No. 10-P-1299.

Norfolk. July 12, 2011. - September 26, 2011.

Present: MILLS, GREEN, & KATZMANN, JJ.

*Insurance,* Homeowner's insurance, Insurer's obligation to defend, Coverage,
Property damage. *Indemnity. Contract,* Insurance, Indemnity. *Words,* "Aris-
ing out of."

In a civil action, the Superior Court judge properly concluded that the plaintiff
insurer had a duty under a homeowner's policy to defend the insureds
against claims of indemnification and contribution brought by a third party
arising from an accident involving two boats (a power boat and a lobster
boat) simultaneously being used by the insureds, where the alleged loss
arose out of both a use that was excluded from coverage and a use that,
due to an exception to the exclusion clause in the policy, was not excluded,
and the complaints did not distinguish between the insureds' use of the
vessels with respect to which use caused the accident. [487-495]

CIVIL ACTION commenced in the Superior Court Department on
September 14, 2007.

The case was heard by *E. Susan Garsh*, J., on motions for
summary judgment.

*Robert A. Curley, Jr.*, for the plaintiff.

*Brendan P. Donahue*, of Vermont, for the defendants.

MILLS, J. Sometimes ships do not pass in the night. At approxi-
mately 9:10 P.M. on Saturday, August 13, 2005, a ferry operated
by a company doing business as Boston Harbor Cruises (BHC)
struck two stationary boats tied together and anchored in Boston
Harbor, sinking both. One of the two boats was a power boat
owned by the defendants Jeffrey and Nicole Crispo (the Crispos).
The other was a lobster boat owned and operated by Jeffrey's
brother, Steven Crispo. The Crispos and Steven (in separate

_____
[1]Nicole Crispo.

actions) sought to recover damages from BHC, and BHC in turn asserted claims for indemnification and contribution against the Crispos, contending that the Crispos' negligence caused the accident. The Crispos sought personal liability coverage under their homeowner's insurance policy (the policy) issued by the plaintiff, Quincy Mutual Fire Insurance Company (Quincy Mutual), which filed this action seeking a declaration that it had no duty to defend or indemnify against BHC's claims. Under the policy, losses arising out of the Crispos' use of the power boat are excluded from coverage, but losses arising out of their use of the lobster boat are excepted from that exclusion. In a thorough and thoughtful memorandum of decision, a Superior Court judge awarded summary judgment in the Crispos' favor. Quincy Mutual appeals. We affirm.

*Background.* We summarize the undisputed facts. On August 13, 2005, the Crispos were aboard their power boat, the MSJC69, and were towing the lobster boat, the Laina Lou, which had lost its propulsion due to transmission trouble. As the two vessels neared Quincy Yacht Club, the MSJC69's propeller shaft became entangled on a mooring line. After cutting loose from the mooring line, the Crispos were unable to restart the MSJC69, its battery dead. The Laina Lou dropped its anchor and the two boats remained attached by the tow line. Due to the dead battery, the MSJC69's running lights were not on. Approximately ten minutes later, the Nora Vittoria, a ferry boat operated by BHC, collided with the two vessels.

Steven Crispo and Dana Gagne, who were both aboard the Laina Lou, later sued BHC in United States District Court, and the Crispos sued BHC in Superior Court, seeking recovery for personal injuries and property damage. In the Federal action, BHC brought a third-party complaint against the Crispos, alleging that the Crispos were responsible for the Federal plaintiffs' damages by failing to take appropriate action to prevent the collision. In the Superior Court action, BHC counterclaimed against the Crispos for indemnification and contribution on the same grounds.[2]

The Crispos sought coverage from Quincy Mutual under the

---

[2]BHC's complaints fairly may be read to claim, among other things, that the accident occurred due to the Crispos' failure to follow the rule of good

policy. In the section of the policy providing for personal liability coverage, the policy states that Quincy Mutual will defend and indemnify as to a claim brought against an insured for bodily injury or property damage caused during the policy period by an accident. The policy lists certain exclusions to liability coverage, including, in relevant part, the following:

> "Personal liability . . . [does] not apply to 'bodily injury' or 'property damage' . . .

> "g. Arising out of:

> "(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below . . .

> "Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an 'insured.'

> "This exclusion does not apply to watercraft:

> "(1) That are not sailing vessels and are powered by: (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an 'insured'; (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an 'insured'; (c) One or more outboard engines or motors with 25 total horsepower or less; (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an 'insured' . . . ."

It is undisputed that the Crispos' use of the MSJC69 would fall within the watercraft exclusion, and that their use of the Laina Lou, a nonsailing vessel powered by an inboard engine of more than fifty horsepower and not owned by the Crispos,

---

seamanship, failure to follow the general prudential rule to avoid immediate danger, failure to maintain a proper lookout, failure to properly determine the risk of collision, failure to take appropriate and early action to avoid collision once the risk became apparent, failure to sound the required signals and the danger signal, failure to display the required light signals for their vessel, and failure to maintain their vessel and its equipment. BHC made no claim of injury to the ferry or its passengers or crew.

would fall within the exception to the watercraft exclusion. Quincy Mutual's policy form had provided for an optional endorsement for watercraft liability, which the Crispos declined to purchase as part of their coverage.

Quincy Mutual initially defended the Crispos against BHC's claims while reserving its right to deny coverage pending the outcome of a declaratory judgment action. On September 14, 2007, Quincy Mutual filed this action seeking a declaration that it had no duty to defend or indemnify the Crispos in the Federal court action.[3]

On September 19, 2008, Quincy Mutual moved for summary judgment in the declaratory judgment action and, shortly thereafter, ceased its defense of the Crispos. The Crispos cross-moved for summary judgment.

On February 11, 2009, the Crispos and BHC settled the underlying actions, on terms by which the Crispos bore no liability and owed no money to BHC. At that point, the only issues remaining in this action were the existence and breach of Quincy Mutual's duty to defend. Summary judgment rulings issued in the Crispos' favor on those questions. Following the entry of final judgment, Quincy Mutual filed this appeal.[4]

*Discussion.* The sole issue before us is whether Quincy Mutual had a duty to defend the Crispos against BHC's claims.[5] For purposes of our discussion, we begin with the premise that the Crispos' tying of the disabled MSJC69 to the Laina Lou at anchor constituted "use" of the Laina Lou within the meaning of the policy.[6] The remaining question is whether the losses

---

[3]In November, 2008, Quincy Mutual, with leave from the judge, supplemented its complaint for declaratory relief to seek a similar declaration as to the underlying State court action. (BHC had filed its counterclaim against the Crispos in the State court action *after* Quincy Mutual's filing of its original declaratory judgment complaint.) The Crispos answered the supplemented complaint in December, 2008, and added a counterclaim for breach of contract arising out of Quincy Mutual's termination of the Crispos' defense in the underlying actions.

[4]In addition to the appropriate declarations, the judgment included awards of damages to the Crispos for attorney's fees and costs in the underlying actions, in the stipulated amount of $41,500 plus interest, and for attorney's fees and costs in this action, in the amount of $19,243.75.

[5]The issues of breach of duty and the amount of damages are not raised.

[6]Though Quincy Mutual argued before the motion judge that the Crispos

alleged in BHC's complaints against the Crispos, which alleg-
edly arose out of the Crispos' use of the MSJC69 as well as the
Laina Lou, created a potential for coverage that triggered Quincy
Mutual's duty to defend. In other words, does a claim trigger a
duty to defend when the alleged loss "arises out of" both a use
that is excluded from coverage and a covered use (or, as in this
case, a use that, due to an exception to the exclusion, is not
excluded)? Quincy Mutual maintains that so long as a use that
is excluded from coverage is alleged as a cause of the loss, the
existence of a causal contribution by another use that is covered
under the policy does not give rise to a duty to defend. We do
not agree.

"[I]t is well settled in this jurisdiction that a liability insurer
owes a broad duty to defend its insured against any claims that
create a *potential* for indemnity." *Simplex Technologies, Inc.* v.
*Liberty Mut. Ins. Co.,* 429 Mass. 196, 199 (1999), quoting from
*Doe* v. *Liberty Mut. Ins. Co.,* 423 Mass. 366, 368 (1996). "[I]f
the allegations of the complaint are 'reasonably susceptible' of
an interpretation that they state or adumbrate a claim covered
by the policy terms, the insurer must undertake the defense."
*Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316,
318 (1983), quoting from *Vappi & Co.* v. *Aetna Cas. & Sur. Co.,*
348 Mass. 427, 431 (1965). The complaints need only state a
claim that gives rise to a possibility of recovery under the policy,
rather than a probability of such recovery. *Simplex Technologies,
Inc.* v. *Liberty Mut. Ins. Co., supra.*

In deciding whether the complaint posed potential for a covered
loss triggering Quincy Mutual's duty to defend, we begin by
comparing the complaints with the policy terms. See *id.* at 197.
The complaints alleged that the Crispos' negligence in using the
MSJC69 and the Laina Lou caused the vessels to be struck by
the ferry. The complaints do not distinguish between the Cris-
pos' use of the two vessels with respect to which use caused the
accident. As the motion judge accurately observed, the allega-
tions of the underlying complaints raise the possibility that the
claims against the Crispos arose from their use of the Laina
Lou.

---

did not "use" the Laina Lou, it did not adequately or meaningfully assert that
argument in its brief and conceded the point at oral argument.

As the motion judge also observed, the policy includes a so-called "anticoncurrent cause" provision in section I of the policy but contains no such provision in section II of the policy, governing the coverage at issue in this case.[7] Where an anticoncurrent cause provision is included with reference to exclusions in one part of the policy, and omitted with reference to exclusions in another part of the policy, Massachusetts courts have interpreted the absence of such provision to mean that a loss caused by a risk excluded in the section without the provision will be covered if a covered risk also contributed to the loss. See *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. 24, 30-31 (1993); *Driscoll* v. *Providence Mut. Fire Ins. Co.*, 69 Mass. App. Ct. 341, 346-347 (2007), quoting from Couch, Insurance § 101:47 (3d ed. 2005) ("[U]nless there is an express policy provision to the contrary, the requirement that the peril insured against be the proximate cause of the loss does not require that it be the sole cause of the loss"). Accordingly, the judge reasoned, Quincy Mutual could have included an anticoncurrent cause provision in the liability section of the policy had it intended to provide coverage only when a covered activity was the sole cause of the loss.

Quincy Mutual counters that it did not need to include an anticoncurrent cause provision in the liability section of the policy because, unlike the phrase "caused by" used in section I of the policy, the phrase "arising out of," prefacing the section II exclusions from third-party liability coverage, conveyed the same limitation on coverage as an anticoncurrent cause provision. Quincy Mutual points out that both the *Jussim* and *Driscoll* cases involved first-party coverage for the insureds' own losses, rather than third-party liability coverage, and therefore did not specifically address the meaning of "arising out of" in an exclusionary provision of a liability policy when both a covered risk and an excluded risk contributed to the loss.[8]

---

[7] The provision, which addresses exclusions to coverage for losses to the insured's own residence, other structures, and personal property, states as follows:

> "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

[8] "First-party insurance, such as protection against loss of an insured's

Our insurance cases have accorded a broader meaning to "arising out of" than to "proximate cause." See, e.g., *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 457 (1999). See also *Commerce Ins. Co.* v. *Theodore*, 65 Mass. App. Ct. 471, 474 (2006) (" '[A]rising out of' is ordinarily held to mean 'originating from, growing out of, flowing from, incident to or having connection with' "), quoting from *Metropolitan Property & Cas. Ins. Co.* v. *Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 821 (2003). But we are not persuaded that "arising out of," used in an exclusionary provision in the liability section of the policy, without more, reasonably should be understood as denying coverage for damages connected to the insured's *simultaneous* undertaking of an excluded risk and a risk specifically excepted from that exclusion, both alleged to have caused a third-party's loss.

In *Nashua Corp.* v. *First State Ins. Co.*, 420 Mass. 196, 202-203 (1995), the Supreme Judicial Court held that the insurer was not entitled to summary judgment where the evidence showed that damages to third-party properties from releases of pollutants from the insured's industrial facilities fell both within the policy's pollution exclusion applying to the insured's routine business practices, and within the exception to that exclusion for sudden and accidental releases. The exclusions to liability coverage included "property damage arising out of the discharge, dispersal, release or escape of . . . pollutants . . . ; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." *Id.* at 198 n.5. Based on that language, as the court explained, "a factual question exist[ed] regarding what portion of the pollution damage resulted from the reclamation sites' ordinary operations and what portion was caused by sudden and accidental releases, if any." *Id.* at 203. Notably, the court did not interpret "arising out of" in the policy's pollution exclusion categorically to deny coverage

property, is often treated differently than third-party insurance that protects the insured against liability to others. Third-party insurance typically provides coverage under the 'concurrent causation' rule if any one of the causes falls within the coverage provided in the policy. In contrast, recovery under first-party insurance coverage is generally permitted if a cause falling within the coverage provided under the policy can be considered the 'efficient cause' of the loss." (Footnote omitted.) Couch, Insurance § 101:56 (3d ed. 2005).

when both a covered risk and an excluded risk contributed to the third party's loss. Contrast *United States Liab. Ins. Co.* v. *Bourbeau*, 49 F.3d 786, 790 (1st Cir. 1995) (pollution exclusion disclaiming coverage for "all liability and expense arising out of or related to any form of pollution" acted to exclude all claims resulting from pollution regardless of fault, responsibility, or causation).

In response, Quincy Mutual points to a line of cases addressing coverage when separate and independent risks contributed to a loss. See, e.g., *Bagley* v. *Monticello Ins. Co.*, 430 Mass. at 456-458.[9] In *Bagley*, the plaintiff claimed her injuries arose jointly from the negligence of restaurant employees, a covered category under the restaurant's liability policy, and from the acts of the restaurant patron who assaulted and raped her, conduct that was excluded under the policy. The court, construing the policy exclusion for any claim "which arises wholly or in part out of" an illegal act, *id.* at 456, held that the plaintiff's injuries were "more appropriately attributable" to the attack than to any actions or inactions of the restaurant's employees. *Id.* at 458. "A fair reading of the plaintiff's complaint in the underlying action indicate[d] that her claim against [the restaurant], and her resulting injuries, had their genesis in [the attacker's] illegal acts." *Ibid.* The court observed that "cases interpreting the phrase 'arising out of' in insurance exclusionary provisions sug-

---

[9]Other similar cases include *Monticello Ins. Co.* v. *Dion*, 65 Mass. App. Ct. 46, 48-49 (2005) (under a commercial general liability policy exclusion for injury "arising out of" operations performed by independent contractors, a worker's death when a tree fell on her was excluded as it would not have happened but for her work in the tree removal operation, and so the insured tree service owner's alleged negligence in cutting the tree was irrelevant); *Commerce Ins. Co.* v. *Theodore*, 65 Mass. App. Ct. 471, 476 (2006) (under a homeowner's policy, a third party who lost his balance and fell from a ladder while helping a property owner cut down a tree on an uninsured parcel sustained injuries "arising out of" the uninsured premises, which was an excluded risk, despite the owner's alleged negligence in stabilizing the ladder, a covered risk); and *American Home Assur. Co.* v. *First Specialty Ins. Corp.*, 73 Mass. App. Ct. 1, 5-6 (2008) (commercial automobile policy applied instead of a commercial general liability policy, where a worker's injuries when he fell from his employer's insured oil truck "result[ed] from" his loading the truck, a risk covered under the automobile policy, and "ar[o]se out of" the use of an "auto," a risk excluded under the worker's employer's liability policy, despite the automobile insurer's allegation that the cause of the accident was the third-party negligence of the oil terminal owner).

gest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Id.* at 457.

In *Bagley* and other such cases, Quincy Mutual suggests, plaintiffs unsuccessfully sought liability coverage for losses arising out of an excluded risk that the court deemed the "but for" cause of the victim's injury, rejecting the plaintiffs' reliance on a causal contribution by a covered risk that was from a separate and independent source that the court deemed more remote. See *id.* at 458 ("It is the *source* from which the plaintiff's personal injury originates rather than the specific *theories of liability* alleged in the complaint which determines the insurer's duty to defend"),[10] quoting from *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 727 (1996). See also *American Home Assur. Co.* v. *First Specialty Ins. Corp.*, 73 Mass. App. Ct. 1, 6 (2008) ("That other causes for an injury also may exist does not preclude a determination that the injury arises out of activities excluded from coverage under the policy").

Quincy Mutual points in particular to *Massachusetts Property Ins. Underwriting Assn.* v. *Gallagher*, 75 Mass. App. Ct. 58 (2009), in which the insured unsuccessfully sought liability coverage under a homeowner's policy for a visitor's suicide by drug overdose, which was excluded as an injury "[a]rising out of" the visitor's unprescribed use of medication, by relying on an exception to the exclusion for the insured's legitimate use of that medication. It was undisputed that it was solely the visitor's use of the insured's medication that caused his death; there was no allegation that the victim's death was also caused by his own simultaneous use of a drug that was prescribed to him. This court, relying on *American Home Assur. Co.* v. *First Specialty Ins. Corp.*, *supra*, rejected the insured's argument that the death came within the exception to the exclusion, as arising out of the

---

[10]"Specifically, claims for negligent supervision, negligent hiring, negligent retention, negligent planning, and similar causes of action, are often made where the underlying injury causing conduct is excluded." Couch, Insurance § 101:58 (3d ed. 2005). See, e.g., *Farm Family Mut. Ins. Co.* v. *Whelpley*, 54 Mass. App. Ct. 743, 746-747 (2002); *Phoenix Ins. Co.* v. *Churchwell*, 57 Mass. App. Ct. 612, 616 (2003).

insured's legitimate prescription drug use — that is, "but for" the insured's legitimate drug use, the drugs would not have been available and accessible to the victim in the insured's home. *Massachusetts Property Ins. Underwriting Assn.* v. *Gallagher,* 75 Mass. App. Ct. at 60-61. Finding the argument "not entirely without persuasive force," we noted that the argument "overlook[ed] the separate and independent application of the exclusion to [the visitor's] own use of" the medication. *Ibid.* We concluded that the injury arose out of the excluded unprescribed use of the drug, which was established as the immediate cause of death, and that the legitimate and covered use of the drug by the insured, to whom it was prescribed, "was decidedly more remote." *Id.* at 61.

Here, in contrast to the *Gallagher* case, the allegations of the complaints against the Crispos do not allege separate and independent uses contributing to the loss, nor do they attribute the loss primarily to use of one vessel or the other. The accident was alleged to have been caused by the Crispos' own simultaneous use of the two vessels, rather than from two separate and independent sources, and we can draw no distinction between the immediacy of the sources' respective causal connections to the loss. Contrast, e.g., *Nashua Corp.* v. *First State Ins. Co.,* 420 Mass. at 203. Where the loss in the underlying complaints was alleged to arise out of the Crispos' use of a covered vessel and an excluded vessel, the policy's exclusion for one vessel did not make clear that coverage was precluded even though the other vessel, which was covered under a specific exception to the exclusion, also contributed to the loss. Accordingly, in this context, we do not construe "arising out of" in the liability section's exclusionary provision as conveying the same import as an anticoncurrent cause provision like that appearing in section I of the policy. See note 7, *supra.* Nor do we think that an objectively reasonable insured, reading the exclusion and its exception, would expect that to be the case. See generally *Hazen Paper Co.* v. *United States Fid. & Guar. Co.,* 407 Mass. 689, 700 (1990); *Western Alliance Ins. Co.* v. *Gill,* 426 Mass. 115, 117, 121 n.7 (1997), quoting from Keeton, Insurance Law § 6.3(a), at 351 (1971).[11]

---

[11]Quincy Mutual argues, at length, that the Crispos should not have expected

As a final matter, the parties debate the significance of *First Specialty Ins. Corp.* v. *American Home Assur. Co.*, 558 F.3d 97 (1st Cir. 2009), a diversity action decided under Maine law, involving a tugboat that was towing a barge when the two vessels ran aground. The case involved a claim for indemnity under a commercial general liability policy that provided coverage for losses arising out of operation of the tugboat but not the barge. *Id.* at 99, 104. Rejecting application of the concurrent cause doctrine — though not in so many words — the Federal court ruled, as matter of law, that the losses incurred when the two vessels ran aground arose from the joint operation of the tug and barge, and that since the barge was an excluded risk, there was no coverage. *Id.* at 104.

As we deal here with Quincy Mutual's duty to defend, our analysis differs. For one, the undisputed facts in that case showed that "the joint operation of the tug and barge led to the wreck, which caused all damages for which [coverage was sought]." *Id.* at 105. The court noted that, had there been an independent cause, such as a lightning strike, it would have been for a jury to parse which cause was primarily responsible for the damages. *Ibid.* The case before us presents just such an independent cause — the ferry that struck the two vessels being used by the Crispos. This case does not involve losses alleged to be caused solely by the "joint operation" of the two vessels, as might have been the case had the losses occurred because the two vessels ran aground or struck one another during the towing process. We cannot determine, from the complaints against the Crispos, which use ultimately would be proved as the cause of the loss, and for purposes of triggering Quincy Mutual's duty to defend, it was for a jury, and not Quincy Mutual, to parse which vessel was primarily responsible. See *Nashua Corp.* v. *First State Ins. Co.*, 420 Mass. at 203 (question of fact regarding what portion of the damages resulted from a release that was excluded under the policy and what portion resulted from a release that fell within an exception to the exclusion). See also *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 682 (1964) ("even if the proof would

---

a homeowner's policy to cover their use of watercraft, and that they should have purchased the optional watercraft liability endorsement if they wanted coverage for the MSJC69. This argument is undercut by the inclusion in the policy of numerous exceptions to the watercraft exclusion.

ultimately relieve [the insurer] from liability to indemnify [the insured] against the judgment, [the insurer] would still be bound to defend the action" based on the allegations of the underlying complaint).

Our holding is a narrow one, derived from the policy language, the broad sweep of the complaints, and the unusual series of events that led to the losses here. In construing and applying the language of an insurance policy, the trial judge, and then the reviewing court, must make a "judgment call . . . as to where the facts of the case fall along a continuum of causation." *American Home Assur. Co. v. First Specialty Ins. Corp.*, 73 Mass. App. Ct. at 6. We conclude that the allegations in the complaints raised the possibility of a covered loss by alleging that both an excluded risk and a risk specifically excepted from exclusion simultaneously contributed to the accident. We therefore agree with the judge that Quincy Mutual had a duty to defend the Crispos under the policy. The Crispos were entitled to summary judgment.

*Conclusion.* The judgment is affirmed. Additionally, the Crispos have requested an award of their attorney's fees and costs of defending the appeal. We allow that request. See *Rubenstein v. Royal Ins. Co. of America*, 429 Mass. 355, 361 (1999). The Crispos shall file an application for fees and costs, with appropriate supporting documentation, with the clerk of this court within fourteen days of the date of the rescript. Quincy Mutual shall have fourteen days thereafter to respond. See *Fabre v. Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*