BONNIE CLENDENNING *vs.* WORCESTER INSURANCE COMPANY.

No. 97-P-1577.

Middlesex. June 12, 1998. - October 22, 1998.

Present: KASS, SPINA, & BECK, JJ.

*Insurance,* Homeowner's insurance, Construction of policy. *Contract,* Insurance. *Words,* "Collapse."

A claim for carpenter ant damage to a house and garage, which had manifested no signs of such damage before inspection and razing, was not within the terms of a homeowner's insurance policy covering loss "involving collapse" caused by hidden insect damage. [660-661]

CIVIL ACTION commenced in the Superior Court Department on April 10, 1995.

Motions for summary judgment were heard by *Richard E. Welch, III,* J., and entry of judgment was ordered by *Catherine A. White,* J.

*Gerald E. Libby, II,* for the defendant.

*Alan S. Fanger* for the plaintiff.

SPINA, J. Bonnie Clendenning filed suit in Superior Court against the defendant, Worcester Insurance Company (Worcester), alleging both breach of contract arising out of a homeowner's insurance policy (policy) issued to her by Worcester and violations of G. L. c. 93A. The parties filed cross motions for summary judgment. A Superior Court judge allowed Clendenning's motion and denied Worcester's motion. A second judge entered judgment for Clendenning and, pursuant to G. L. c. 93A, awarded her prejudgment interest from the date of her demand for relief. Worcester appeals, arguing that the court erred in allowing Clendenning's motion for summary judgment and denying its motion and in awarding Clendenning prejudgment interest. We reverse.

There is no dispute that a workman, hired by Clendenning to perform ordinary maintenance at her home, jumped off a ladder

onto the side porch of her home. Some support beams gave way on impact, prompting an inspection of the structure. Clendenning's workmen discovered carpenter ant damage to the front and side porches, as well as to the garage, which was connected to the side porch. Those structures were razed before Worcester had an opportunity to inspect the standing structures. Worcester has examined the affected timbers since the razing and does not claim prejudice from any lost opportunity to view the structures before their removal.

Prior to being razed, the two porches and the garage manifested no signs of insect damage. In a statement given to claim investigators, Clendenning admitted that when the structures were still standing they looked "no more crooked than the rest of the house." A structural engineer examined samples of timber from the razed structures and concluded that "the members were so severely damaged that reinforcement would have been inadequate to remedy the problem . . . [and that] removal of the members was appropriate and necessary from a safety standpoint."

Worcester denied Clendenning's claim for carpenter ant damage to the structures except for damage in the area that collapsed under the weight of the workman's jump. In denying coverage, Worcester relied upon the following provisions in Clendenning's policy:

"*Section 1 - Property Coverages* . . .

"*Additional Coverages* . . .

"8. Collapse. We insure for direct physical loss to covered property *involving collapse* of a building or any part of a building caused only by one or more of the following: . . .

(b) hidden decay;

(c) *hidden insect* or vermin *damage* . . .

"*Section 1 - Perils Insured Against*

"We insure against risks of direct loss to property described in [dwelling coverage] and [other structures coverage] only if that loss is a physical loss to property; *however, we do not insure loss*:

"1. *involving collapse, other than as provided in Additional Coverage 8*;

"2. *caused by*: . . .

f. (7) birds, vermin, rodents, *insects* or domestic animals." (Emphasis added.)

Worcester claims that the plain language of the policy excludes coverage for direct loss caused by insects, unless that loss was hidden and resulted in a *collapse* of all or part of a building. It argues that there was no collapse, and therefore no insurable loss, except where the workman's foot broke through.

"The interpretation of an insurance policy is a 'question of law for the trial judge, and then for the reviewing court.' " *Nelson* v. *Cambridge Mut. Fire Ins. Co.*, 30 Mass. App. Ct. 671, 673 (1991), quoting from *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). See *Jefferson Ins. Co.* v. *National Union Fire Ins. Co.*, 42 Mass. App. Ct. 94, 97 n.10 (1997). "In interpreting the provisions of a policy, we construe and enforce unambiguous terms according to their plain meaning . . . . When the provisions of a policy are plainly and definitely expressed, the policy must be enforced in accordance with the terms." *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 427 (1995) (citations omitted).

"Collapse" is defined in Webster's Third New International Dictionary 443 (1993) both as a verb:

"1: to break down completely . . . 2: to fall or shrink together abruptly and completely . . . 3: to cave in, fall in, or give way . . . 6: to fold down into a more compact shape . . . ."

and as noun:

"2: the action of collapsing . . . 3a: . . . sudden failure . . . ."

We glean from the definitions both a temporal element of suddenness (though the noun may accommodate a gradual loss of structure) and a visual element of altered appearance that comprises a structural collapse, distinct from the degenerative process causing the collapse. Both elements are absent here.

The policy expressly excludes damage caused by insects,

except as may be hidden and which results in a collapse of all or part of the structure. The hidden destructive process must run its full course to be insurable. Anything short of that is expressly excluded under the policy. A collapse, within the meaning of the policy, is a perceptible event or state caused by a specific degenerative process, here, the patient gnawing of swarms of carpenter ants. There are no degrees of collapse. The policy does not cover "imminent" collapse, as Clendenning argues; it only covers the collapse. See *Davidson* v. *United Fire & Cas. Co.*, 576 So. 2d 586, 590 (La. App. 1991); *Heintz* v. *United States Fire & Guar. Co.*, 730 S.W.2d 268, 269 (Mo. App. 1987); *Gage* v. *Union Mut. Fire Ins. Co.*, 122 Vt. 246, 248-249 (1961). Neither a sudden event nor a state of collapse was ever established here, except as to that portion of the side porch which gave way under the workman's fall and which was accepted by Worcester as damage covered under the policy.

Clendenning urges us to view the term "collapse" as inherently ambiguous, and to construe the policy as requiring coverage for any substantial impairment of the structural integrity of a building. We decline to do so. She relies upon *Allstate Ins. Co.* v. *Forest Lynn Homeowners Assn.*, 892 F. Supp. 1310, 1313 (W.D. Wash. 1995), for the proposition that the interpretation we follow would give "insureds . . . the incentive to allow the structure to progress to the point of falling down." That case is factually distinguishable, because the structures there were sagging and arguably had collapsed. Clendenning's argument also fails because her policy excludes coverage for insect damage of which she becomes aware.

*Thomasson* v. *Grain Dealers Mut. Ins. Co.*, 103 N.C. App. 475, 477-478 (1991), upon which Clendenning relies in arguing that our construction would render the "hidden insect damage" claims illusory, is similarly unavailing. It is immaterial that the hidden insect damage may have progressed to the point beyond which any repairs would be warranted: the policy only covers the most extreme case. Here, there had been no collapse. Compare *Goodman* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 807, 813 (1992) (gasoline leak begun slowly from a crack or small hole in a tank brought about by its aging, and increased over time as the hole widened, probably not a "sudden" event within the pollution exception clause of a policy).

In view of the result we reach, we need not address the remaining issue of the award of prejudgment interest under

c. 93A. The judgment of the Superior Court is reversed, and an order for summary judgment is to enter in favor of Worcester.

*So ordered.*