PREFERRED MUTUAL INSURANCE CO., Plaintiff,

v.

Daniel T. and Debra A. MEGGISON, Defendants.

No. CIV. A. 97–30169–MAP.

United States District Court, D. Massachusetts.

June 24, 1999.

Paul S. Weinberg, Robinson, Donovan, Madden & Barry, Springfield, MA, for Plaintiff.

Harold I. Resnic, Springfield, MA, for Defendants.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION FOR SEPARATE TRIALS, PLAINTIFF'S MOTION TO STRIKE*

(Docket Nos. 42, 46, 53)

PONSOR, District Judge.

## I. *INTRODUCTION*

When defendants house was damaged, they submitted a claim to their insurer, plaintiff Preferred Mutual Insurance Company, under their homeowners policy. Plaintiff denied the claim and filed suit seeking a declaratory judgment that the denial of coverage was appropriate. Defendants filed a counterclaim, charging breach of contract and violation of Massachusetts consumer protection statutes. Plaintiff now moves for summary judgment, for separate trials, and to strike defendants' Rule 56.1 statement.

For the reasons set forth below, this court will deny the motion for summary judgment, allow the motion for separate trials, and deny the motion to strike.

## II. *FACTS AND PROCEEDINGS*

In 1987, defendants bought a home located at 33 Pine Grove Street in Springfield, Massachusetts. The house, which is over fifty years old, had been physically moved to the 33 Pine Grove Street site in 1986.

On March 20, 1996, defendants submitted a claim to their insurer, Preferred Mutual, under their homeowners insurance policy. They claimed that their home had suffered water damage and had partially collapsed on January 17, 1996 as a result of the weight of snow and ice. Although defendants did not notice the damage until February or March, they selected the date of January 17 because a snow storm struck

the area at about that time. (Docket No. 45, Exhibit 2 at 4)

Defendants hired Brian Birmingham of Birmingham Public Adjusters, who initially estimated that it would cost $19,370.32 to repair the premises. (Docket No. 45, Exhibit 10)

Plaintiff assigned ASAP Adjusting Services and Lawrence L. Voelker, an engineer, to investigate the claim. Based on their investigations, plaintiff concluded that most of the damage to defendants' home was excluded from coverage under their policy. Accordingly, on July 1, 1996 plaintiff paid the water damage portion of the claim, $1,938.14, but denied the larger collapse portion. In its letter denying coverage, plaintiff explained that the home lacked proper support in the front and had inherent structural problems. It further stated that the weight of snow and ice merely contributed secondarily to the problem. Plaintiff also cited three causes of damage that were expressly excluded from coverage under the policy: (1) earth movement, (2) wear and tear, and (3) errors, omissions and defects in "the design, specification, construction, workmanship or installation of property." (Docket No. 45, Exhibit 16)

On October 3, 1996, Birmingham wrote to plaintiff on defendants' behalf, informing plaintiff that he was advising defendants to file suit under Mass. Gen. Laws 176d and 93A. (Docket No. 45, Exhibit 17) Birmingham also increased his repair estimate to $84,106.26. (Docket No. 45, Exhibit 18)

Following re-inspection by Voelker, plaintiff maintained its position that coverage would be denied. On May 27, 1998, after this lawsuit was filed, defendants upped their demand to $150,000. (Docket No. 45, Exhibit 20) They later increased their demand to $167,850, which included $75,000 for emotional distress. (Docket No. 45, Exhibit 21)

On August 11, 1997, plaintiff filed this lawsuit, seeking a declaratory judgment that the denial of coverage was appropriate. The defendants counterclaimed, alleging breach of contract and unfair settlement practices. Plaintiff now moves for summary judgment. Plaintiff also moves for separate trials and to strike defendants' Rule 56.1 statement.

## III. *DISCUSSION*

### A. *Motion for Summary Judgment*

#### 1. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank*, 985 F.2d 1113, 1116 (1st Cir. 1993). Initially, the moving party must aver an absence of evidence to support the nonmoving party's case. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). In order to fend off summary judgment, the nonmoving party (here, the defendants) must "establish at least a genuine issue of material fact on every element essential to his case in chief." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991). But "[t]he nonmovant cannot simply rest upon mere allegations." *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 91 (1st Cir.1994). "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* (quotations and citations omitted). At summary judgment, it is this court's obligation "to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993) (citation omitted).

### 2. *The Anticoncurrent Cause Clause*

Defendants' insurance policy contains what the parties characterize as an "anticoncurrent cause" provision. It states that Preferred Mutual will not pay for a loss if one or more of several enumerated causes played any role in the loss, even if otherwise covered causes also contributed to the loss:

> We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.
>
> . . .
>
> 12. Errors, Omissions and Defects— We do not pay for loss which results from one or more of the following:
>
> a. an act, error, or omission (negligent or not) relating to:
>
> 1) land use;
>
> 2) the design, specification, construction, workmanship or installation of property;
>
> 3) planning, zoning, development, surveying, siting, grading, compaction; or
>
> 4) maintenance of property (including land, structures or improvements);
>
> whether on or off the insured premises;
>
> b. a defect, a weakness, the inadequacy, a fault or unsoundness in materials used in construction or repair whether on or off the insured premises.

Anticoncurrent causation provisions, such as the one at issue here, have appeared in recent years in response to the concurrent causation doctrine, under which some courts have found that insurers are "obligated to pay for damages resulting from a combination of covered and excluded perils if the efficient proximate cause is a covered peril." Stephen P. Pate, *Recent Developments in Property Insurance Law,* 33 Tort & Ins. L.J. 659 (Winter, 1998). Anticoncurrent causation provisions in insurance contracts avoid application of the doctrine by expressly stating that a loss is excluded from coverage if it results from a combination of covered and excluded perils.

The "vast majority of states" uphold such clauses. *Id.; see, e.g., Assurance Co. of America, Inc. v. Jay–Mar, Inc.,* 38 F.Supp.2d 349, 353–54 (D.N.J.1999) (finding no violation of public policy when parties to an insurance contract agree that there will be no coverage for loss due to concurrent or sequential causes; compiling case law); *Pakmark Corp. v. Liberty Mut. Ins. Co.,* 943 S.W.2d 256, 258–61 (Mo.Ct. App.1997) (interpreting anticoncurrent clause to exclude coverage). Indeed, the Massachusetts Supreme Judicial Court has affirmed application of an anticoncurrent cause provision similar to the clause in the case at hand. *See Alton v. Manufacturers & Merchants Mut. Ins. Co.,* 416 Mass. 611, 613–15, 624 N.E.2d 545 (1993) (holding that anticoncurrent cause provision barred coverage); *see also Jussim v. Massachusetts Bay Ins. Co.,* 415 Mass. 24, 30–31, 610 N.E.2d 954 (1993) (suggesting that anticoncurrent language in insurance contract could operate to exclude coverage); *Preferred Mut. Ins. Co. v. Travelers Cos.,* 955 F.Supp. 9, 11–12 (D.Mass.1997) (referencing *Jussim* ), *aff'd,* 127 F.3d 136 (1st Cir. 1997).

In this case, defendants claim that the weight of snow and ice caused their loss. Plaintiff contends, however, that the weight of snow and ice was merely a secondary contributing factor to defendants' loss and that the primary cause of the loss was a design defect in the home, specifically, inadequate support under the front porch. Because the anticoncurrent cause provision enumerates such defects as excluded causes, plaintiff maintains that it is not required to pay for defendants' loss, regardless of whether the weight of snow and ice also contributed to the loss.

This court must therefore determine whether, on the undisputed facts of record, a reasonable jury would be constrained to conclude that the loss in this case resulted

primarily from lack of adequate support under the porch. If defendants fail to present evidence establishing a genuine issue of material fact on this point, then coverage must be denied in accordance with the anticoncurrent causation clause, regardless of whether other causes, such as the weight of snow and ice, contributed to the loss.

In support of its argument that lack of adequate support under the porch caused defendants' loss, plaintiff refers to the reports and deposition testimony of Voelker, its engineering expert, who twice inspected defendants' home. In his deposition, Voelker expressed his opinion that the cause of most of the cracks in the walls was "by and large . . . the lack of adequate support under the front of that building." (Docket No. 45, Exhibit 3 at 12) Conceding that the weight of snow and ice might have contributed secondarily to or had an "agitating effect" on the house's problems, he emphasized that the "prime reason" for the damage to the house was "inherent design deficiency . . . the lack of support underneath the front of the porch." (Docket No. 45, Exhibit 3 at 17–18; Docket No. 51, Exhibit 5 at 52)

Voelker's written reports are consistent with his oral testimony. After his first inspection of the home, Voelker issued a report on May 3, 1996 in which he concluded that the home had "an inherent structural problem" and an "inadequate support system," though he noted that "snow loading ha[d] certainly had a secondary contribution to the problem." (Docket No. 45, Exhibit 14) Following a second inspection of the home, Voelker's conclusion remained essentially unchanged. His January 17, 1997 report reiterated his belief that the porch was inadequately supported and that snow loads likely contributed to the problems. (Docket No. 45, Exhibit 19)

Finally, in his Federal Rule of Civil Procedure 26(a)(2) expert witness report, Voelker unequivocally stated that "[i]t is my opinion that the damage, which constitutes the Defendants' claim, was caused by a lack of durable and effective structural support under the integral front porch and front section of the home." He continued, "I can not deny that snow loading could have an agitating effect on the existing structural problem, which is the lack of an effective support system under the porch area." (Docket No. 51, Exhibit 2) "It is my opinion, however, that the snow loading contention is a secondary issue, compared to the above noted structural support deficiency, which is the prime cause of the damage." (*Id.*)

Defendants, by contrast, assert that the weight of ice and snow was the primary cause of their loss. They point to reports filed by the public adjuster they hired, Brian Birmingham, who accompanied Voelker during both inspections of the premises. In a November 18, 1998 letter to defendants' counsel, Birmingham referred to the snow load as the "proximate cause of the loss." (Docket No. 51, Exhibit 1) He further remarked that excavation of the site had revealed that the footings supporting the front porch were "5 feet 3 inches under ground," while "required is four feet," and that "the footings were on poured concrete pads below the footings." (*Id.*) Given these findings, Birmingham stated that "[t]his further erodes the company's position that the structure was defective." (*Id.*)

██ Birmingham's findings are admittedly less extensive than Voelker's. On the whole, his analysis of the cause of defendants' loss is neither as detailed nor as broad as Voelker's. And his conclusion is less definitive. But viewing the record in the light most favorable to the defendants, the discrepancy between the opinions of Voelker and Birmingham regarding the role played by the house's alleged structural deficiency in defendants' loss creates a genuine issue of material fact sufficient to narrowly survive summary judgment.

### 3. *Settling, Cracking and Bulging*

As a separate basis for summary judgment, plaintiff points to an exclusion in the insurance policy that provides "We do not pay for loss caused by the settling, cracking, shrinking, bulging or expanding of a building structure or mobile home," and argues that coverage should be denied because defendants' house did, in fact, settle, crack and bulge.

■ It is beyond dispute that the defendants' house has suffered from settling, cracking, and bulging. Substantially less clear, however, is whether the settling, cracking, and bulging *caused* defendants' loss or is merely a symptom of the damage. On this record, it is reasonable to see the settling, cracking, and bulging as the result of harm to the residence, not as its cause. The policy exclusion therefore does not necessarily control defendants' claim.[1]

■ Moreover, defendants argue they are entitled to coverage under paragraph 13 of Coverage C, which applies to losses caused by the weight of snow and ice:

> Coverage C—Personal Property—This policy insures against direct physical loss to property covered under Coverage C—Personal Property, caused by the following:
>
> . . .
>
> 13. Weight of Ice, Snow or Sleet which damages a structure or the property inside. We do not pay for loss to awnings or canopies and their supports or swimming pools.

■ This provision is somewhat puzzling. The policy identifies Coverage C as coverage for personal property, and Coverage A as coverage for a residence. Yet, paragraph 13 of Coverage C refers to damage to "a structure or the property inside." The policy does not explain whether the word "structure" includes residences and porches. As ambiguities in insurance contracts are generally read in the insured's favor, *see, e.g., Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.,* 169 F.3d 43, 49–50 (1st Cir.1999), however, Coverage C(13) can reasonably be read to include loss to a residential structure, including a porch, resulting from the weight of snow or ice. Thus, drawing all reasonable inferences in favor of defendants, this provision may entitle defendants to coverage.

In sum, defendants have established that their loss may fall within the grant of coverage provided in Coverage C(13). Additionally, as noted, it remains a disputed issue of material fact whether settling, cracking and bulging caused defendants' loss. In this light, plaintiff's motion for summary judgment must fail.

### B. *Motion for Separate Trials*

■ As previously noted, defendants have asserted counterclaims for breach of contract and unfair settlement practices. Plaintiff moves for a separate trial on the unfair settlement practices claims, arguing that "resolution of the declaratory judgment action may determine the outcome of the entire proceeding and obviate the necessity of considering evidence that is only relevant to defendants' unfair settlement counterclaims." (Docket No. 47) This court agrees. In the interest of judicial economy, the motion to try defendants' unfair settlement counterclaims in a sepa-

---

1. On a related note, defendants maintain that their loss should be characterized as "collapse" resulting from the weight of snow and ice, not as settling, cracking, or bulging. At least one Massachusetts court has considered when a loss may be characterized as "collapse." In *Clendenning v. Worcester Insurance Co.,* 45 Mass.App.Ct. 658, 660, 700 N.E.2d 846 (1998), which both parties rely upon in support of their positions, the court defined "collapse" as involving "both a temporal element of suddenness ... and a visual element of altered appearance." While the *Clendenning* definition of collapse provides guidance, it does not in this case and under this particular insurance policy, resolve the factual dispute as to whether settling, cracking and bulging actually caused the damage to defendants' home.

rate proceeding will therefore be allowed. *See* Fed.R.Civ.P. 42(b).

#### C. *Motion to Strike*

Plaintiff moves to strike defendants' Rule 56.1 Statement of Material Facts as to Which There is a Genuine Dispute or to treat its own Rule 56.1 Statement as admitted in its entirety, arguing that defendants have failed to challenge directly its Statement of Facts and failed to support their assertions with citations to the record. Recognizing the confusion surrounding the factual issues in this case and the facial inadequacy of defendants' Statement, this court at oral argument allowed defendants an opportunity to file a supplemental Statement of Material Facts, which defendants did. (Docket No. 59)

Though hardly a model pleading, defendants' Statement will not be stricken outright; as evidenced by this court's ruling on the motion for summary judgment, the cognizable portions of defendants' submissions have established genuine issues of material fact. Where their Statement presents unsupported assertions of fact, this court has simply disregarded it.

#### IV. *CONCLUSION*

Although, as noted, this record presents a close call, defendants have established sufficient issues of material fact to fend off summary judgment. Plaintiff's motion for summary judgment will therefore be denied. Plaintiff's motion for separate trials will be allowed, and plaintiff's motion to strike will be denied.