Rup, J.
This case arises from a dispute over the extent of coverage under a business owner’s policy (“policy”) issued to the plaintiffs Paul and Denise Driscoll (“Driscolls”) by the defendant, Providence Mutual Fire Insurance Company (“Providence”). The Driscolls seek declaratory relief regarding the scope of coverage under their policy. After trial without a jury, based upon the credible evidence, I find and rule as follows.
FINDINGS OF FACT
The Driscolls own residential rental property located at 16 Fifth Avenue, in Webster. The three-story, three-apartment wood-frame house was constructed upon the property approximately 70 years ago. In or around November 1996, the Driscolls’ tenant vacated the third-floor apartment. When the Driscolls inspected the apartment in order to ready it for a new tenant, they discovered signs of structural damage to the house, which included the outside walls leaning outward, cracks in the ceiling and interior walls and approximately two inches drop of the roof.
The Driscolls insured their property under a business owner’s policy from Providence, policy number B598-0005. The parties do not dispute that the Driscolls’ rental house is covered property under the policy or that the policy was in force during the period when the Driscolls claim the damage occurred.
After discovering the damage, the Driscolls submitted a claim to Providence. Providence hired Thomas Soules (“Soules”), an engineer, to investigate the cause of the damage. In December 1996, Soules prepared a written report detailing the results of his investigation. He opined that the method of construction used in building the house had caused the damage. Soules concluded that the lack of collar ties in the attic (a common construction technique in houses built at the time) eventually caused the roof to drop and the walls to spread outward. In his opinion, the dilapidated condition of the roof and hence the other damage, had existed for a significant some time prior to his inspection. Because he expected to see damage in areas where none was found, and because he found evidence that someone had tried to stop the roof from sagging by “long since” placing improvised supports under the center roof beam, he opined that repairs had been attempted over the years. He found that the damage had no relation to shrinkage or settlement, but only to the failure of the roofs design.
*601 On December 23, 1996, after receiving Soule’s report, Providence’s agent, Pelletier & Rourke, Inc., denied the Driscolls’ claim. The denial made general reference to the exclusions listed in the policy and specific reference to exclusion 3, C., “negligent work.”
Upon receiving the claim denial, the Driscolls hired counsel who, in turn, hired another engineer, Philip Westover (“Westover”). After inspecting the Driscolls’ rental house, Westover opined that while a small portion of the roof failure had occurred over an extended time period, most of it occurred relatively recently to his inspection. He based this conclusion on information provided by the Driscolls regarding the dates of interior remodeling (wall papering, etc.) and his observations of the condition of the remodeling described. He found that, when coupled with the weight of snow from the prior winter, a lack of proper shoring in the attic caused the problems and that the construction method used was common at the time of the house’s construction. He based his conclusion regarding the effect of the snow’s weight on his own experiences as an engineer inspecting other homes for similar damage which occurred during the same time period as his inspection of the Driscolls’ properly. Inspection of the ad hoc supports in the attic led him to conclude that some were of recent vintage and placed in response to the Driscolls’ discovery of the problem. However, he also concluded that most of the supports dated back to the original construction and were likely used in that process.
I accept the two engineers’ opinions that the precipitating cause of the damage to the Driscolls’ property was the lack of stabilization devices, such as collar ties, in the attic, and that the damage is not related to settling or shrinkage.
Based on the credible evidence and reasonable inferences I have drawn therefrom, I find that the weight of snow and ice from the winter of 1995-96 which, when coupled with the original construction design of the roof, caused most of the damage to the Driscolls’ rental property.
RULINGS OF LAW
The insured must show that his or her claim comes within a policy’s basic grant of coverage. See Schiappa v. Nat’l Marine Underwriters, Inc., 56 Mass.App.Ct, 161, 163 (2002). The burden is on the insurer to demonstrate that the claim falls within an exclusion.[2] See Metropolitan Property & Casualty Ins. Co. v. Fitchburg Mutual Ins. Co., 58 Mass.App.Ct. 818, 820 (2003). If an insurer meets that burden, it falls again to the insured to show that an exception to the exclusion applies. See Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 231 (1997).
As pertinent to the instant controversy, Section A of the Driscolls’ policy provides coverage “for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss.” The policy defines “Covered Causes of Loss” as follows:
RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
a. Excluded in Section B., Exclusions: or
b. Limited in Paragraph A.4., Limitations.
The policy does not define “Risks” or “Risks of Direct Physical Loss”; however, this type of policy is commonly referred to as an “all risk” or “multi-peril” policy and encompasses the claim here. See, e.g., Bettigole v. American Employers Ins. Co., 30 Mass.App.Ct. 272 (1991). The Exclusions section of the policy (Section B)[3] states, in relevant part, that the insurer:
will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
2. We will not pay for loss or damage caused by or resulting from any of the following: . . .
i. Collapse: Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a covered cause of loss results at the described premises, we will pay for that resulting damage . . .
k. Other Types of Loss
(1) Wear and tear;
(2) Rust . . . deterioration, hidden or latent defect or any quality in the property that causes it to destroy itself; . . .
(6) Mechanical breakdown.
The Driscolls’ policy also provides “Additional Coverages” (Section A.5.(d)) which provides coverage for:
... loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:
(1) The “specified causes of loss” ... only as insured against in this policy
(2) Hidden Decay . . .
As defined, “Specified Causes of Loss” includes “weight of snow, ice or sleet; water damage.” (Policy, Section H.6.)
An insurance policy language is inteipreted by construing the relevant language like any other contract, in its ordinary and usual sense absent some ambiguity. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). The determination of whether policy language is ambiguous depends not on opposing dictionary definitions, but rather on whether the language “is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Id. (quoting Jefferson Ins. Co. v. Holyoke, 23 Mass.App.Ct. 472, 474-75 (1987)). Where *602 policy language is ambiguous, the rules of policy construction dictate that such ambiguity be construed against the insurer. See County of Barnstable v. American Financial Corp., 51 Mass.App.Ct. 213, 215 (2001). Ambiguity can be either patent or latent. See id.
In the instant case, the “Exclusions” section of the policy does not define “collapse.” The “Additional Coverages” section provides some guidance insofar as it provides that: “[c]ollapse does not include settling, cracking, shrinking, bulging or expansion.” Damage to the Driscolls’ property does not readily fit within any of those conditions. In Clendenning v. Worcester Ins. Co., 45 Mass.App.Ct. 658 (1998), the Appeals Court addressed language nearly identical to that used in the instant policy. In that case, from definitions set forth in Websters’ Third International Dictionary 443 (1993), the Court “glean[ed] . . . both a temporal element of suddenness ... and a visual element of altered appearance that comprises a structural collapse, distinct from the degenerative process causing the collapse.” Clendenning, 45 Mass.App.Ct. at 660. It interpreted “collapse,” within the meaning of the Worcester policy, as “a perceptible event or state caused by a specific degenerative process . . .” Id. at 660-61. The condition of the Driscolls’ house meets these definitions. The “perceptible event or state” is the dropped roof and resultant damage. The “specific degenerative process” which caused the damage was the gravitational pull of the combined mass of snow and roof against the frame of the house. Furthermore, the damage resulted from a “specified cause of loss”: the weight of ice, sleet or snow.
To the extent that Providence argues that the policy expressly excludes “cracking” and “bulging" as conditions that come within the meaning of “collapse,” its argument fails. Those conditions, while expressly excluded, were the end of a direct causal chain emanating from a covered risk of loss expressed in the Additional Coverages section, collapse of a part of a building caused by a specified cause of loss. See Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 27-30 (1993). The cracking of the ceiling and interior walls, and bulging of the exterior walls at the eaves, were caused by the collapse of the roof under the weight of ice and snow and are therefore not excluded from coverage.[4] See id.
ORDER
For the foregoing reasons, it is hereby ORDERED that a declaration enter that the damage to the plaintiffs’ property is covered under the terms of the insurance policy issued by the defendants Providence Mutual Fire and Insurance Company.

Further refinements on this rule of construction are not implicated here. See Aerovox, Inc., 424 Mass, at 232 n.8.

The Limitations section of the policy (Section C), understood in its ordinary sense, is inapplicable to this case.

In their complaint, the Driscolls also claimed that Providence violated G.L.c. 93A, §§9 and 11 (Count III) and G.L.c. 176D, §3(9) (Count IV). The parties had a good faith dispute regarding coverage in this matter. Consequently, Providence’s liability was not “reasonably clear.” See G.L.c. 176D, §3(9).