PAUL DRISCOLL & another[1] vs. PROVIDENCE MUTUAL FIRE
INSURANCE COMPANY.

No. 06-P-1137.

Worcester. March 20, 2007. - June 13, 2007.

Present: DUFFLY, DREBEN, & MEADE, JJ.

*Insurance,* Coverage.

In a civil action concerning the scope of coverage under an "all risk" insur-
ance policy on certain real property, a Superior Court judge properly
determined that damage to the property caused by faulty roof design
combined with the weight of snow and ice came within the broad coverage
of the policy, and that no exclusions in the policy applied to bar coverage.
[343-347]

CIVIL ACTION commenced in the Superior Court Department on
October 21, 1997.

The case was heard by *Mary-Lou Rup,* J.

*Stephen M.A. Woodworth* for the defendant.

*Douglas Q. Meystre* (*Howard J. Potash* with him) for the
plaintiffs.

MEADE, J. This appeal arises from a dispute over the extent of
coverage under a business owner's policy issued to the plaintiffs
Paul and Denise Driscoll by the defendant, Providence Mutual
Fire Insurance Company (Providence). In Superior Court, the
Driscolls sought declaratory relief regarding the scope of cover-
age under their policy. After a trial based on an agreed state-
ment of facts and the admission of certain evidence in lieu of
testimony, a judgment entered declaring that the damage to the
Driscolls' property was covered under the terms of the policy.
Providence's appeal followed; we affirm.

1. *Facts.* Upon inspecting their Webster rental property to

---

[1]Denise Driscoll.

prepare it for a new tenant, the Driscolls discovered damage at that property, including outward-leaning outside walls, ceiling cracks, a two-inch drop in the roof, and other problems. The Driscolls timely submitted a claim to their insurance company, Providence. Providence denied the claim on the basis of its expert's opinion that the damage was caused by faulty roof design, a cause that is excluded from coverage in the Driscolls' policy. Unsatisfied with Providence's determination, the Driscolls hired their own engineer, who inspected the house and determined that faulty design had combined with the weight of snow from the prior winter to result in the property damage.

After trial, the judge ruled that the property damage was covered by the Driscolls' insurance policy.[2] The judge, as fact finder, accepted the engineers' opinions that "the precipitating cause of the damage to the Driscolls' property was the lack of stabilization devices, such as collar ties, in the attic, and that the damage is not related to settling or shrinkage."[3] In addition, she found "that the weight of snow and ice from the winter of

---

[2]There is no merit to Providence's claim that to the extent the judge relied on the report of the Driscolls' engineer, the evidence was insufficient to support the judgment. The parties agreed that the competing engineers' reports would be treated as testimony from which the judge was free to make credibility determinations. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). See also *Mollahan* v. *McGrath*, 357 Mass. 229, 232 (1970), quoting from *Frati* v. *Jannini*, 226 Mass. 430, 431 (1917) ("When a case is heard on an agreement of the parties as to the evidence, 'the agreement merely takes the place of the evidence which otherwise would be introduced in the usual way, and either the jury renders a general verdict or the judge makes a general finding founded upon that' "). Moreover, "[t]he question on appeal from a decision on facts agreed as evidence is whether on all the evidence the decision was warranted." *Mollahan* v. *McGrath*, 357 Mass. at 232. We are of the view that it was.

[3]We reject as meritless Providence's argument that the testimony of the Driscolls' expert was not admissible because it failed to meet the requirements of *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-26 (1994). See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Not only is this claim raised for the first time on appeal and therefore waived, see *Newell* v. *Department of Mental Retardation*, 446 Mass. 286, 298 n.27 (2006), but the parties agreed that the reports of their respective experts would be admitted for the judge to consider as evidence at their jury-waived trial. See *Commonwealth* v. *Crouse*, 447 Mass. 558, 570 n.11 (2006) ("[t]o the extent that the defendant's claim rests on the judge's failure to assume the role of gatekeeper to preclude the introduction of 'junk science' evidence, it is too late for the defendant to request a *Lanigan* hearing").

1995-1996, . . . when coupled with the original construction design of the roof, caused most of the damage to the Driscolls' rental property."

2. *Discussion.* As noted, we will not disturb the judge's factual findings in this appeal. (See notes 2 and 3, *supra.*) Our task is to determine the effect of the insurance contract under the circumstances found. "The interpretation of an insurance policy is a 'question of law for the trial judge, and then for the reviewing court.' " *Clendenning* v. *Worcester Ins. Co.,* 45 Mass. App. Ct. 658, 660 (1998), quoting from *Nelson* v. *Cambridge Mut. Fire Ins. Co.,* 30 Mass. App. Ct. 671, 673 (1991).

The Driscolls have a so-called "all risk" policy. See *Bettigole* v. *American Employers Ins. Co.,* 30 Mass. App. Ct. 272, 272 (1991). The policy broadly identifies the "Covered Causes of Loss" as follows under paragraph A.3.:

> "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a. Excluded in Section B., Exclusions; or b. Limited in Paragraph A.4., Limitations . . . ."[4]

Given the policy's wide breadth of coverage, the insurer bears the burden of showing that the insured's claim falls within an exclusion. See *Metropolitan Prop. & Cas. Ins. Co.* v. *Fitchburg Mut. Ins. Co.,* 58 Mass. App. Ct. 818, 820 (2003). Here, Providence points to the collapse exclusion of paragraph B.2.i. as the applicable bar to coverage. This exclusion states that

> "[w]e will not pay for loss or damage caused by or resulting from any of the following:
>
> ". . .
>
> "i. Collapse: Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage."

In turn, the provision for "Additional Coverages" for collapse, paragraph A.5.d., states in relevant part as follows:

> "We will pay for loss or damage caused by or resulting

---

[4]The limitations paragraph is not at issue in this appeal.

from risks of direct physical loss involving collapse of a building or any part of a building caused *only by* one or more of the following:

> "(1) The 'specified causes of loss' . . . ."

(Emphasis supplied.)

The phrase "specified causes of loss" is explained under the "Property Definitions" contained in paragraph H.6 as meaning:

> "Fire; lighting; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; *weight of snow, ice or sleet*; water damage. . . ."

(Emphasis supplied.)

Taken together, the collapse exclusion, paragraph B.2.i., and the "Additional Coverages" provision for collapse, paragraph A.5.d., mean that Providence only insures certain kinds of collapse, namely, those due *only* to the causes listed in the latter paragraph. Here, no reading of the judge's findings could lead to a conclusion that *only* the weight of the snow and ice caused this damage, *even if* the damage constituted a "collapse." Therefore, the "Additional Coverages" provision is inapplicable to this case.

We are therefore left to determine whether the collapse exclusion applies. We disagree with the judge's conclusion that the damage here amounted to a collapse. On this point, we view as controlling the opinion in *Clendenning* v. *Worcester Ins. Co.*, 45 Mass. App. Ct. at 660-661. In that case, due to hidden damage caused by insects, portions of the plaintiff's home were in danger of collapse. *Id.* at 659. Prior to any collapse, the homeowner razed those portions of the house before the home insurer could inspect it. *Ibid.* The insurer argued that the homeowner was not entitled to recover for property damage (other than that produced by a workman who had jumped onto the roof of a side porch, causing some support beams to give way) because the insured structure itself never actually collapsed. *Id.* at 659-660. Agreeing with the insurer, we held that "collapse" included "both a temporal element of suddenness (though the noun may accom-

modate a gradual loss of structure) and a visual element of altered appearance that comprises a structural collapse, distinct from the degenerative process causing the collapse." *Id.* at 660. We added that "collapse, within the meaning of the policy, is a perceptible event or state caused by a specific degenerative process . . . . There are no degrees of collapse." *Id.* at 661. See *Dreiblatt* v. *St. Paul Fire & Marine Ins. Co.*, 264 F.3d 126, 129-131 (1st Cir. 2001).

Providence points out in its brief that the Driscolls' roof was still in place, any destruction had not run its full course, a change of only a few inches of roof sag was perceptible, and "there was no evidence of a sudden collapse." Providence correctly notes that "[n]o one in the case alleged a total collapse." Indeed, applying the *Clendenning* collapse definition to the facts of this case, it becomes clear that the collapse exception does not apply to the damage. The judge found that various types of damage had occurred: the outside walls leaned outward, cracks had appeared in the ceiling and interior walls, and there was a two-inch drop in the roof. None of these rises to the level of a *Clendenning* collapse. See *Clendenning* v. *Worcester Ins. Co.*, 45 Mass. App. Ct. at 660-661.

Put simply, the coverage in the Driscolls' policy is broad. Although the "Additional Coverages" for collapse provision does not apply, neither does the underlying collapse exclusion. The Driscolls' claim, unlike the *Clendenning* claim, did not require a finding that a collapse occurred in order for a loss to be covered. In *Clendenning*, the policy expressly excluded damage caused by insects except as may have been hidden and which resulted in a collapse of the structure. *Clendenning* v. *Worcester Ins. Co.*, 45 Mass. App. Ct. at 659-661. Here, the physical damage caused by the weight of snow and ice is nowhere excluded, and to be covered, damage so caused does not require a collapse under the Driscolls' policy.

Furthermore, no other exclusions apply. This includes the exclusion for settling, cracking, shrinking, or expansion under paragraph B.2.k.(4),[5] which the judge specifically and correctly found did not occur, and the exclusion for faulty workmanship

[5]Paragraph B.2.k. excludes "Other Types of Loss" such as:

or construction under paragraph B.3.c.[6] The latter exclusion does not apply because it is preceded by the following language: "We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." Covered causes are, according to paragraph A.3. discussed above, all causes except those excluded in section B (or limited by paragraph A.4.). The judge found that *both* faulty design and the weight of snow and ice caused the damage. The latter is a covered cause of loss which is not excluded, and therefore the faulty design exclusion does not bar coverage. See Couch on Insurance § 101:47 (3d ed. 2005) ("unless there is an

"(1) Wear and tear;

"(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

"(3) Smog;

"(4) Settling, cracking, shrinking or expansion;

"(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

"(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

"(7) The following causes of loss to personal property:

"(a) Dampness or dryness of atmosphere;

"(b) Changes in or extremes of temperature; or

"(c) Marring or scratching.

"But if loss or damage by the 'specified causes of loss' or building glass breakage results, we will pay for that resulting loss or damage."

[6]Paragraph B.3.c. excludes:

"Negligent Work: Faulty, inadequate or defective:

"(1) Planning, zoning, development, surveying, siting;

"(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

"(3) Materials used in repair, construction, renovation or modeling; or

"(4) Maintenance;

"of part or all of any property on or off the described premises."

express policy provision to the contrary, the requirement that the peril insured against be the proximate cause of the loss does not require that it be the sole cause of the loss. . . .").

Unlike the exclusion in paragraph B.1.,[7] the exclusion in paragraph B.3. does not include an anticoncurrent cause provision, which would bar coverage for damage due to certain causes regardless of otherwise covered causes of damage. See *Jussim* v. *Massachusetts Bay Ins. Co.*, 415 Mass. 24, 30-31 (1993) (suggesting that anticoncurrent cause language in policy would operate to exclude coverage). Contrast *Alton* v. *Manufacturers & Merchs. Mut. Ins. Co.*, 416 Mass. 611, 613-615 (1993) (even if policy might have covered one cause of damage, coverage was prohibited where coverage for another cause was excluded regardless of other contributing causes). For all of these reasons, we find no error in the judge's determination that the damage to the Driscolls' rental property is covered by their policy.

*Judgment affirmed.*

---

[7]The paragraph B.1. exclusion states: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in sequence to the loss. . . ." The provision then lists several excluded causes or events not relevant here.