Leibensperger, Edward P., J.
United Specialty Insurance Company (“United Specially” or “Insurer”) filed a complaint seeking a declaration that its denial of insurance coverage for a claimed loss (release of fuel oil) was proper. Shirley D. Weisberg, the named insured, and Marlene Shore, Weisberg’s niece and agent (collectively “the Insured”), filed a counterclaim alleging breach of contract, unfair insurance claim settlement practices in violation of G.L.c. 176D and c. 93A, and seeking a declaratory judgment that the loss was covered by the insurance policy. This matter is before the court on the Insured’s motion for summary judgment on the complaint and counterclaim. In response, the Insurer cross moved for summary judgment pursuant to Mass.R.Civ.P. 56(c). After hearing and review of the parties’ submissions and the relevant law, the Insured’s motion is DENIED and the Insurer’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
At all relevant times Weisberg owned a two-unit residential property located at 88 Dalton Road, Belmont, Massachusetts (the “Properly”). Weisberg occupied the second-floor unit until May 2008, when she was admitted to a hospital and later to a nursing home. In June 2009, Shore and her father began trying to sell the Properly. As of June 2009, both the first-floor and second-floor units were vacant. The two units have separate heating systems and oil tanks.
On behalf of Weisberg, Shore purchased a United Specialty “Commercial Property, Building and Personal Property Coverage Form” Insurance Policy — Policy Number ABT055609 (the “Policy”) — to cover the Property from October 14, 2009 until April 14, 2010. Joint Appendix of Exhibits (“Joint Appendix”) Ex. 1. The Common Policy Declarations states that the Properly is a “vacant building.” The Policy provided coverage for direct physical loss or damage to the Properly “caused by or resulting from any Covered Cause of Loss.” Policy, Pt A Coverage. The Covered Causes of Loss Form, form CP10300402, indicates that the term “Causes of Loss” means “Risks of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions . . .” The term “Risks of Direct Physical Loss” is, as far as the court can determine, undefined in the Policy.
The relevant portions of the Policy’s Exclusions section is set forth in the footnote.[2] Section B.2.1. provides the exclusion (the “Pollution Exclusion”) relied upon by the Insurer to deny coverage.
On November 1, 2009, a prospective buyer of the Property had a home inspection performed at the Property. The home inspector informed the Insured’s agent, Tom Hevey of Lawndale Realty, Inc., that the heating system for the first-floor unit shut down immediately after it was turned on. Hevey contacted Shore who informed him that the problem was not caused by a lack of oil in the oil tank because she “had the same experience last winter!.]” Joint Appendix, Ex. 3. Shore contacted Lyons Fuel Oil, Inc. Lyons Fuel agreed to service both heating systems on November 3, 2009.[3] When Lyons Fuel serviced the heating system in November 2009, it did not have to disconnect the oil line from the oil tank. Joint Statement of Undisputed Material Facts (“SUF”), par. 7.[4] When Lyons Fuel finished working on the heating systems, each heating system was restarted. At this time there was no oil leak or drip. SUF, par. 8.
On November 11, 2009, Hevey and a representative of the prospective buyer visited the Property and did not observe any liquid substance on the basement floor or oil leaking from the oil tanks. SUF, par. 9. On November 24, 2009, Sue Pizzi, a realtor with Lawndale Realty, visited the Property with the prospective buyer’s bank appraiser. During this visit, Pizzi noticed a liquid substance in the center of the basement floor. Pizzi informed Hevey that there was an unknown liquid substance on the basement floor. SUF, par. 10. Based on Pizzi’s description of where the liquid substance was found — in the center of the basement near the water tanks — Hevey assumed it was water and called Shore. SUF, par. 11.
On November 25, 2009, Shore and her father went to the Property and observed several puddles of oil on the basement floor.[5] Shore Affidavit, par. 11; SUF, par. 12. Shore also noticed that the oil line connecting the oil tank to the burner was disconnected and that the oil tank was empty. Shore Affidavit par. 11. Shore called the Belmont Fire Department. The Fire Department responded and filed an incident report. The Fire Department also called Lyons Fuel. Sean Lyons re *256 sponded to the Property. He observed the disconnected line. According to his deposition, he “probably” remarked “who the hell did that?” and “you gotta be kidding me.” Lyons Deposition p. 125. Lyons did not observe any damage to the oil line, oil tank, or heating system. Lyons Deposition, 126-27.
United Specialty retained Engle, Martin & Associates, Inc. (“Engle”) to investigate the Insured’s claim. On December 10, 2009, Engle sent the Insured a letter denying coverage for the claim because the “damage was the result of wear and tear" and the “escape of ‘pollutants’ is excluded under the policy, unless the release or escape is itself caused by any ‘specified causes of loss.’ ” Joint Appendix Ex. 8. In a letter dated December 22, 2009, the Insured’s attorney informed United Specialty that there was no factual basis to disclaim coverage due to wear and tear and that “the Pollution Exclusion does not bar coverage here because there was a concurrent or sequential covered cause ofloss[.]” Joint Appendix Ex. 9. United Specialty reiterated its decision to deny coverage in a January 21, 2010 letter.
OnFebruary 18,2010, Richard R. Papetti of Abvima Engineering, Inc. visited the Property and inspected the oil line, oil tank, and heating system. Report of Richard Papetti, P.E. (“Papetti Report”). Joint Appendix Ex. 7. Papetti found that “the components of the fuel oil supply line [were] free of appreciable corrosion, wear & tear, abrasion, kinking, deformations, manufacturing defects, overpressurization, and installation errors that could be related to a fuel oil release.” Papetti Report, 2. Papetti further found that “the threaded to compression adapter fitting that was found to be separated and determined to be the source of the fuel oil release is free of appreciable corrosion, wear & tear, abrasion, deformations, manufacturing defects, overpressurization, and installation errors that could be related to a fuel oil release.” Papetti Report, 2-3. Papetti concluded the “more probable than not cause of the separation [was] a purposeful and complete unthreading of the mating elements of the compression joint for undetermined reasons.” Papetti Report, 3.
DISCUSSION
I.Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party cannot defeat a motion for summary judgment merely by resting on its pleadings and assertions of disputed facts, rather it must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982). All reasonable inferences are to be viewed “in favor of the non-moving party.” Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 411 (2007). See Attorney Gen., 386 Mass. at 370, quoting Hayden v. First Nat’l Bank, 596 F.2d 994, 997 (5th Cir. 1979) (“A court should not grant a party’s motion for summary judgment ‘merely because the facts [the moving party] offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial’ ”).
II.Interpretation of Insurance Policy
An insurance policy is interpreted in the same manner as any other contract. It is a question of law for the trial judge. Norfolk & Dedham Mut. Fire Ins. Co. v. Quane, 442 Mass. 704, 707 (2004); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). Where the policy language is unambiguous, the court will construe the words of the policy in their usual and ordinary sense. Money Store/Mass., Inc. v. Hingham Mut. Fire Ins. Co., 430 Mass. 298, 300 (1999). “However, an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other.” Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
III.Analysis
The Insured asserts that if the fuel oil release was the result of a negligent act then the “train of events” test articulated in Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 27 (1993), dictates coverage under the insurance policy. The Insurer contends that the “train of events” test does not apply because the Pollution Exclusion specifically defines what events are Specified Causes of Loss that provide coverage even if the ultimate loss is one, such as fuel oil release, that is excluded by the Pollution Exclusion. The parties also disagree about the proper allocation of the burden of proof with respect to the Pollution Exclusion and whether there is aSpecified Cause ofLoss. Finally, the parties take opposite positions as to whether a Specified Cause of Loss — vandalism — is established on the summary judgment record.
*257 A.Inapplicability of the “Train of Events” Test
In Jussim, negligent acts on a neighbor’s property caused 500 gallons of home heating oil to seep underground and damage Jussim’s property. 415 Mass, at 26. Jussim’s insurance policy covered losses caused by the negligence of a third party, however, it excluded from coverage “loss . . . caused by . . . release, discharge or dispersal of contaminants or pollutants.” Id. In articulating the “train of events” test, the Supreme Judicial Court stated if the efficient proximate cause of the loss is “an insured risk, there will be coverage even though the final form of the property damage, produced by a series of related events, appears to take the loss outside of the terms of the policy.” Id. at 27.
If anti-concurrent language[6] had preceded the pollution exclusion, the Supreme Judicial Court stated that the “train of events” test would have been inapplicable. Id. at 30-31. The Supreme Judicial Court further stated if “an insurer desires to eliminate coverage for pollution or contamination caused by a fortuitous negligent act, language accomplishing that purpose, and the means to do so, are readily available.” Id. at 31. The Appeals Court in Hanover New Eng. Ins. Co. v. Smith, concluded that an insurance policy that states any ensuing loss “not excluded or excepted in this policy is covered” cuts “across the train of events analysis" because the policy language identifies which ensuing losses were covered and which were not covered. 35 Mass.App.Ct. 417, 418, 420 (1993).
The same is true of the Pollution Exclusion involved in this case. The specificity with which the Pollution Exclusion is drafted precludes the application of the “train of events” test. The Pollution Exclusion provides that United Specialty will not pay for loss or damage caused by the discharge of pollutants “unless the discharge ... is itself caused by any of the ‘specified causes of loss.’ ” The Pollution Exclusion clearly and unambiguously states precisely what antecedent events dictate coverage under the insurance policy despite the loss being a fuel oil release. Accordingly, if the fuel oil release was not caused by one of the enumerated “Specified Causes of Loss” the Pollution Exclusion applies and bars coverage. See Wakefield v. Royal Ins. Co., 1995 WL 433585 at *4 (Mass.Super. 1995) [4 Mass. L. Rptr. 41] (insurance policy providing “that loss or damage caused by the discharge of pollutants is excluded unless the discharge ... is itself caused by [enumerated events]” negated the application of the “train of events” test because the pollution exclusion “states exactly what antecedent events will result in coverage”). The Insured asserts that a “plausible (although unlikely) explanation is negligence; for example if Lyons Fuel did not fully reconnect the oil line joint on November 3, 2009 that caused it later to separate.” Mem. of Law in Supp. of the Mot. by Defs. for Summ. J. at 14. Negligence, however, is not a Specified Cause of Loss. Because the “train of events” does not apply, there is no coverage for fuel oil release caused by negligence. Moreover, coverage for negligence of Lyons Fuel is barred because of the Independent Contractors Exclusion which provides: “[t]his insurance does not apply to any claim arising out of the operations of any independent contractor or to any act or omission of any insured in the general supervision of such operations.” Joint Appendix, Ex. 1.
B.Burden of Proof
It is well settled that the Insurer bears the burden of showing that the Insured’s claim of loss falls within an exclusion in the Policy. See Driscoll v. Providence Mut. Fire Ins. Co., 69 Mass.App.Ct. 341, 343 (2007). United Specialty, therefore, bears the initial burden of establishing that the Pollution Exclusion is grounds for denying the Insured’s claim. Although the Policy does not define the term “pollutants,” Massachusetts courts have found that home heating oil is a pollutant as that term is used in insurance policies. McGregor v. Allamerica Ins. Co., 449 Mass. 400, 404 (2007) (“spilled oil is a classic example of pollution, and a reasonable insured would understand oil leaking into the ground to be a pollutant”); Hanover New Eng. Ins. Co., 35 Mass.App.Ct. at 419 (“release of home heating oil is a release of a contaminant within the meaning of the policy”). The parties agree that home heating oil was discovered in the basement of the Property. SUF pars. 1, 12-14. Consequently, the Insurer has carried its initial burden of showing that the Pollution Exclusion applies to the claimed loss.
The Pollution Exclusion, however, contains an exception: “But if [the pollution] results in a ‘specified cause of loss’, we will pay for the loss or damage caused by that ‘specified cause of loss.’ ” According to established law, the burden is on the Insured to prove that an exception to the exclusion applies. Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 231 (1997) (“Once the insurer has demonstrated that a policy exclusion applies negating coverage, placing the burden on the insured to prove that the damage was caused [by an exception to the exclusion] is consistent with the general rule that the insured must prove that coverage applies!.]”); Massachusetts Prop. Ins. Underwriting Ass’n v. Wynn, 60 Mass.App.Ct. 824, 826 (2004) (individual seeking to recover under third-party’s insurance policy had the “burden of proving the applicability of the exception to the exclusion”). Here, the Insured contends that “vandalism,” a defined “Specified Cause of Loss,” was the cause of the fuel oil release. It is the Insured’s burden to prove vandalism.
C.Vandalism
In their motions for summary judgment each side argues that whether the loss was caused by vandalism may be determined, as a matter of law, from the summary judgment record. The Court disagrees. The record provides sufficient facts to allow a reasonable inference of vandalism (thereby defeating the Insurer’s motion) but does not conclusively establish vandalism *258 (thereby defeating the Insured’s motion). Whether the fuel oil release was caused by vandalism is a disputed issue of fact that must be decided by a jury.[7]
In the context of insurance policies, vandalism refers to “wanton and malicious acts as are intended to damage or destroy properly.” Rich v. United Mut. Fire Ins. Co., 328 Mass. 133, 135 (1951); see also Pintsopolous v. Home Ins. Co., 340 Mass. 734, 736 (1960). A brief discussion of the Rich and Pintsopolous cases is helpful to understanding what must be proved.
In Rich, the insured parked his vehicle on a hill. Two and a half hours later and for no apparent reason the vehicle crashed into a tree at the bottom of the hill. In order to state a recoverable claim within the insurance policy, Rich had to show that the collision was caused by vandalism. The trial judge directed a verdict in favor of the insurance company. Id. at 135. The Supreme Judicial Court affirmed, holding that although it could be found that the vehicle collided with the tree because of human intervention, “there was no greater probability that the force which caused the [vehicle] to move was applied intentionally by a [vandal] than, for example, by some negligent act of the operator of another automobile or the act of a child in play. The evidence leaves the cause of the impulse to the automobile a matter of speculation, conjuncture, and surmise.” Id.
In Pintsopolous, on the other hand, the insured purchased a tractor at an auction. There was animosity between the insured and some of the unsuccessful buyers. 340 Mass, at 735. Twelve days later the tractor began experiencing mechanical problems because approximately one quart of sand had been inserted into the tractor’s motor. Id. The insured had to prove that the loss was caused by vandalism. Id. at 736. An expert for the insured testified that sand could only enter the motor if “someone puts it in.” Id. The trial judge denied the insurer’s motion for a directed verdict and the jury found for the insured. Id. at 735. The Supreme Judicial Court affirmed the jury’s verdict, holding that the evidence “warranted the jury in concluding that there was greater probability that the quart of sand reached the motor through the oil intake because of intentional human intervention [constituting] malicious mischief or vandalism than that it came there by any accidental or negligent means or through normal use.” Id.
The summary judgment record shows that the fuel oil release occurred within a brief window of time— sometime between November 11 and November 24, 2009. The parties agree that Lyons Fuel’s service call on November 3, did not “require disconnection of the fuel oil line.” SUF par. 7. Nevertheless, the oil release occurred because of a complete disconnection of the fuel line, an intentional act that requires a wrench to accomplish. SUF 18. Lyons denied disconnecting the line. Moreover, the Property was vacant, leaving the possibility that someone could have entered unnoticed. The evidence from the Insured’s expert, Papetti,. ruled out mere wear and tear of the coupling. His opinion that “more probable than not cause of the separation [was] a purposeful and complete unthread-ing of the mating elements of the compression joint for undetermined reasons,” Papetti Report, 3, is a reasonable inference. Malice or intent to injure the Properly can be inferred from the known fact that causing fuel oil to be released upon a basement floor will cause damage.
Accordingly, genuine issues of material fact exist concerning whether the fuel oil line was disconnected as a result of vandalism. Summary judgment is, therefore, inappropriate. Because genuine issues of material fact exist regarding coverage, the Court leaves for resolution after all the evidence is presented at trial the Insured’s counterclaims for breach of contract and violations of G.L.c. 93A and G.L.c. 176D.
ORDER
For the above-mentioned reasons, the Insured’s Motion for Summary Judgment is DENIED. The cross motion for summary judgment by the Insurer is ALLOWED to the extent that, as described above, the Court declares there is no coverage if the loss was caused by negligence. However, the Insurer’s motion is DENIED with respect to a requested declaration of no coverage. If a jury finds the loss was caused by vandalism, the Policy provides coverage.

B. Exclusions
1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
* * * *
2. We will not pay for loss or damage caused by or resulting from any of the following:
1. Discharge, dispersal, seepage, migration, release or escape of “pollutants” unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the “specified causes of loss.” But if the discharge, dispersal, seepage, migration, release or escape of “pollutants” results in a “specified cause of loss,” we will pay for the loss or damage caused by that “specified cause of loss.” * * * *
G. Definitions
2. “Specified Causes of Loss” means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow; ice or sleet; water damage.

In 2002, Lyons Fuel began servicing the heating systems and delivering oil to the Property. In 2006, Lyons Fuel replaced the oil line and burner for the second-floor unit.

Sean Lyons testified that if an oil line is incorrectly reconnected to an oil tank, oil will leak, but that it would not result in a complete disconnection. Lyons Deposition, 119-120.

Upon Pizzi's November 24, 2009 visit, only puddling of the oil remained because most of the oil had penetrated into the subsurface through cracks and openings in the basement floor. SUF, par. 14.

An example of anti-concurrent language is “[w]e will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.” Joint Appendix, Ex. 1, §B.l.

The Insured asserts that because the Insurance Policy includes a Vacancy Permit, vandalism “is a covered cause of loss in the first instance as well.” Mem. of Law in Supp. of the Mot. by Defs. for Summ. J. at 12 n.5. The Vacancy Permit modifies and supersedes the Vacancy Loss Condition limitation in the “Building and Personal Property Coverage Form.” Although the Vacancy Permit provides that vandalism is an “excepted cause of loss,” once the Insurer establishes an exclusion, the Insured must establish an exception to the exclusion. The Vacancy Permit, therefore, does not alter which party bears which burden.